[L. A. No. 10.    Department One.—March 24, 1896.]

SIMON MAIER, RESPONDENT, *v.* B. W. FREEMAN ET AL., APPELLANTS.   HAAS, BARUCH & Co. ET AL., RESPONDENTS.

CHATTEL MORTGAGE—AUTHORIZED SALE BY MORTGAGOR—LOSS OF LIEN— TITLE TO PROCEEDS — ATTACHMENT OF UNPAID PURCHASE MONEY. — Where the mortgagees of sheep under a chattel mortgage authorized the mortgagor to make sale of the sheep, he agreeing to deposit the proceeds in bank to the credit of the mortgagees, the lien upon the sheep is lost and extinguished by the sale, and is not transferred to the proceeds in the hands of the mortgagor, but such proceeds are the property of the mortgagor until collected and paid over to the mortgagees, and unpaid purchase money may be attached by creditors of the mortgagor.

ID.—TITLE TO MORTGAGED PROPERTY—EFFECT OF AGREEMENT TO SELL— TRUST—EQUITABLE ASSIGNMENT.—In this state, and presumptively in another state, the title to personal property upon which a chattel mortgage is given remains in the mortgagor, and does not pass to the mortgagee; and the effect of an agreement that the mortgagor shall sell the mortgaged property and collect and pay the proceeds to the mortgagees, cannot be to create a trust in the proceeds of sale, or an equitable assignment thereof to the mortgagees.

ID.—PREMATURE ATTACHMENT—PRIORITY OF LIENS.—There can be no attachment of the proceeds of the sale by the mortgagee prior to the completion of the sale, and an attachment served upon the proposed purchaser before the sheep had been weighed or delivered to him, is premature and invalid, and a garnishment under an execution in his favor is subject to other attachments levied after the completion of the sale and prior to such garnishment.

APPEAL from a judgment of the Superior Court of Los Angeles County. WALDO M. YORK, Judge.

The facts are stated in the opinion.

*Ben. Goodrich,* and *A. B. McCutchen,* for Appellants B. W. Freeman et al.

The lien of the mortgage was not lost because of the agreement that the mortgagor should sell the mortgaged property; nor was there such constructive fraud as would destroy the lien. (*Gibbs* v. *Parsons,* 64 N. H. 66; *Felner* v. *Wilson,* 55 Ark. 77; *Lane* v. *Starr,* 1 S. Dak. 107, and cases cited; *Conkling* v. *Shelley,* 28 N. Y. 360; 84 Am. Dec. 348; *Brackett* v. *Harvey,* 91 N. Y. 215; Civ. Code, sec. 1479; Jones on Chattel Mortgages, sec. 410.) The

agreement between Nellis and the bank shows the creation of a valid express trust, or an equitable assignment of the fund; and the subject matter being money, it is not within the recording acts, the acts relating to transfers of personal property, nor the statute of frauds. (*Chamberlain* v. *Gilman*, 14 Pac. Rep. [Col.] 107; Civ. Code, sec. 2223; *Doran* v. *Doran*, 99 Cal. 311; *Roach* v. *Caraffa*, 85 Cal. 436; *Hellman* v. *McWilliams*, 70 Cal. 449; *Silvey* v. *Hodgdon*, 52 Cal. 363; *Walling* v. *Miller*, 15 Cal. 38; *Bibend* v. *Liverpool Ins. Co.*, 30 Cal. 78; *Howe* v. *Jones*, 57 Iowa, 130; Pomeroy's Equity Jurisprudence, secs. 1236, 1280; *Neumann* v. *Calumet etc. Min. Co.*, 57 Mich. 97; *Danser* v. *Warwick*, 33 N. J. Eq. 133; *Mohn* v. *Mohn*, 112 Ind. 285; *Collar* v. *Collar*, 75 Mich. 414; *Maffitt* v. *Rynd*, 69 Pa. St. 380; *Wiseman* v. *Baylor*, 69 Tex. 63; *Calder* v. *Moran*, 49 Mich. 14.)

*John D. Pope*, for Appellant Cormick E. Boyce.

The sale of the sheep in Arizona at an agreed price and consignment to the purchaser was a delivery to purchaser sufficient to make him the debtor of the seller, which relation existed at the time of Boyce's attachment. (Code Civ. Proc., sec. 542, subd. 5; *Davis* v. *Mitchell*, 34 Cal. 81; Freeman on Executions, sec. 165; *King* v. *Vance*, 46 Ind. 246; *Dunnegan* v. *Byers*, 17 Ark. 492; *Fulweiler* v. *Hughes*, 17 Pa. St. 440; *Cottrell* v. *Varnum*, 5 Ala. 229; 39 Am. Dec. 323; *Groome* v. *Lewis*, 23 Md. 137; 87 Am. Dec. 563; Tiedeman on Sales, sec. 95; *Meyer Bros. Drug Co.* v. *McMahan*, 50 Mo. App. 18; *Falvey* v. *Richmond*, 87 Ga. 99; *Hobart* v. *Littlefield*, 13 R. I. 341; *Kessler* v. *Smith*, 42 Minn. 494; *Magruder* v. *Gage*, 33 Md. 344; 3 Am. Rep. 177; *Comstock* v. *Affoelter*, 50 Mo. 411; *Burton* v. *Baird*, 44 Ark. 556; *Diversy* v. *Kellogg*, 44 Ill. 114; 92 Am. Dec. 153; *Gates* v. *Carquinez Packing Co.*, 78 Cal. 439; *Mee* v. *McNider*, 109 N. Y. 500; Civ. Code, secs. 1140, 1141.) The mortgage lien did not attach to the proceeds of the property. (*Nordby* v. *Clough*, 79 Iowa, 428; *White Mountain Bank* v. *West*, 46 Me. 15; Herman on Chattel Mortgages, 247–54.)

*Allen & Flint,* and *Graves, O'Melveny & Shankland,* for Respondents Gregory Perkins, Jr., and Haas, Baruch & Co.

A trust cannot be created which disregards the statute concerning transfers. (Civ. Code, secs. 2220, 2888, 2913, 2927, 3440; *Bank of Ukiah* v. *Moore,* 106 Cal. 673; *Bank of Ukiah* v. *Gibson,* 109 Cal. 97.) The garnishment by Boyce was premature, as the sheep had not been delivered or weighed, therefore nothing was due. (*Redondo Beach Co.* v. *California etc. Co.,* 101 Cal. 325; *Inglehart* v. *Moore,* 21 Tex. 501; *Price* v. *Brady,* 21 Tex. 614; *Bassett* v. *Garthwaite,* 22 Tex. 230; 73 Am. Dec. 257; 2 United States Digest, 135; *Hassie* v. *God etc. Cong.,* 35 Cal. 378; *Early* v. *Redwood City,* 57 Cal. 194, *Norris* v. *Burgoyne,* 4 Cal. 409; Drake on Attachment; sec. 553.)

BRITT, C.—The plaintiff Maier, being indebted in the sum of $2898.90 for sheep purchased by him from one Nellis, and conflicting claims being made upon him for the money by several creditors of Nellis, he instituted this action against said creditors and Nellis to compel them to interplead concerning their several pretensions. This being done, after trial the court entered judgment awarding the fund (which Maier had then paid into court) to certain of the defendants who had summoned Maier as garnishee in the course of actions prosecuted by them, respectively, against Nellis. By such determination of the court the demands of Haas, Baruch & Co., a copartnership, and of defendant Perkins are to be first paid, and the fund is sufficient to satisfy them in full; the residue thereof is to be paid to defendant Boyce, and is not sufficient to pay the whole of his claim.

Defendants Freeman, Kimball and Hoskins constitute a copartnership engaged in business in the territory of Arizona, under the firm name of the "Arizona Central Bank," they having complied with the laws of the territory respecting fictitious names of partnerships, and

being authorized to carry on business under that name. They claim the whole of the fund in dispute by reason of a chattel mortgage made by Nellis to them upon the said sheep, and certain other transactions they had with him touching the sheep, before the sale thereof to Maier. The court gave judgment in favor of Freeman and his said copartners against Nellis personally for the unpaid amount of the debt specified in the mortgage—something over four thousand dollars; they appeal from that portion of the judgment which applies the fund to the payment of the attaching creditors.   Boyce appeals from so much of the judgment as postpones his demand to those of Haas, Baruch & Co. and Perkins.

The appeal of Freeman, Kimball, and Hoskins presents several interesting questions (some of them not necessary to be now considered) which have been argued by their counsel ably and ingeniously; but in our opinion the judgment adverse to them was right.

On November 28, 1893, before the debt specified in the mortgage became due, the mortgagees agreed with Nellis in writing as follows:

"We hereby appoint William Nellis as agent to take six cars of sheep to California, one of which goes to San Bernardino and five to Los Angeles, he to turn over the proceeds of said sheep to us, to be applied upon his mortgage to us, which said mortgage covers said sheep. This applies to these six cars only, and extends for ten days only from this date, said sheep to be shipped in our name.        ARIZONA CENTRAL BANK, M'tgees.
"11–28–'93.                         By J. H. Hoskins."

Appellants allege that it was part of the agreement between the parties to the mortgage that the mortgagor should deposit the net proceeds of the sale of the sheep in a bank at Los Angeles to the credit of the mortgagees; also that the sale and delivery of the sheep to Maier was made pursuant to such agreement; and so in substance was the finding of the court.   Now, plainly, by this agreement the mortgagees intended, upon a sale by Nellis, that title to the sheep should pass to the pur-

chaser free of the lien of their mortgage, and that the proceeds of the sale should be paid to Nellis; and on these facts the lien on the sheep was not translated to the proceeds in the hands of the purchaser.  *White Mountain Bank* v. *West*, 46 Me. 15, 20, is a case directly in point, and we agree with the view there stated, that "from the time of sale the lien of the mortgage was extinguished, and the mortgagee was left with no security but the personal promise of the mortgagor to pay the proceeds to him."  There are many decisions that the mortgagee of chattels may authorize the mortgagor to sell the encumbered property and apply the proceeds of sale upon the debt secured, and that such an agreement does not render the mortgage fraudulent in law, nor affect the lien thereof prior to the sale (*Bracket* v. *Harvey*, 91 N. Y. 221; *Murray* v. *McNealy*, 86 Ala. 234; 11 Am. St. Rep. 33; *Lane* v. *Starr*, 1 S. Dak. 107, and cases cited); but we have found no case in which the lien was held to attach to the proceeds unpaid by the purchaser.  The doctrine of the case from 46 Maine, above cited, is that if the mortgagee "wished to reach the proceeds in the hands of the purchasers, he, like other creditors, should have resorted to a trustee process under the statute."

It is urged for the mortgagees that the agreement of November 28, 1893, operated to create a trust in their favor in the fund to be derived from the sale, or an equitable assignment of such fund to them.  It seems to us there might be more color for this contention, or some part of it, if the mortgage had vested the title to the sheep in the mortgagees, as was the rule of the common law; but under our law, and presumptively under that of Arizona, the title remained in Nellis.  (Civ. Code, sec. 2888; *Bank of Ukiah* v. *Moore*, 106 Cal. 681.) He being the owner and possessed of the sheep, to say that his agreement created, as against creditors, a trust in or an assignment of the proceeds of a sale which he had not then made, or, so far as shown, contracted to make, is to say that he could create a secret trust in the

sheep or a pledge thereof and yet retain possession of them—contrary to the statutes. (Civ. Code, secs. 2988, 3440.) Authorities are cited to show that such enactments have no application to choses in action; but the agreement of November 28th did not purport to deal with a chose in action. And, aside from other considerations, the retention by Nellis of the authority to collect the anticipated fund to arise from the sale was inconsistent with the idea of an equitable assignment of the same. (*Christmas* v. *Russell*, 14 Wall. 69, 84; *Christmas* v. *Griswold*, 8 Ohio St. 558.)

The appeal of Boyce is easier of disposition. By the contract of sale between Nellis and M ier the former was to deliver the sheep at Maier's slaughterhouse, about five miles from the railroad station at Los Angeles; they were to be weighed at the slaughterhouse, and be paid for at the rate of three cents per pound. The garnishment in the suit of Boyce against Nellis was served on Maier after the sheep had been unloaded at the station and while they were yet in charge of Nellis' employees and before they had reached the slaughterhouse or had been weighed; consequently, before the sale was complete and before any credit existed in favor of Nellis and against Maier, and when it was not certain that any ever would exist. The law aids the vigilant, but in this instance the creditor was vigilant overmuch, and his attachment was invalid. The garnishment under his subsequent execution was after the attachments of the other creditors had been levied and perfected by judgment, and they were rightly held entitled to precedence in the distribution of the fund. (*Early* v. *Redwood City*, 57 Cal. 193; 1 Freeman on Executions, sec. 165.) The judgment should be affirmed.

HAYNES, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

GAROUTTE, J., VAN FLEET, J., HARRISON, J.

Hearing in Bank denied.