[Civ. No. 1712. First Appellate District.—April 27, 1916.]

## A. C. CROSBY, Respondent, v. FRESNO FRUIT GROWERS' COMPANY (a Corporation), Appellant.

MORTGAGE ON GROWING CROPS—DELIVERY TO PACKING ASSOCIATION—VIOLATION OF AGREEMENT—LIEN NOT LOST.—The lien of a mortgage on a crop of grapes is not lost by the delivery of the crop to a packing house for marketing by the mortgagor in his own name in violation of an agreement between the mortgagor and mortgagee that the crop

should be delivered in the name of the mortgagee, as under such an agreement the mortgagor is constituted the agent of the mortgagee.

Id.—Removal of Crop Independent of Agreement—Lien not Lost—Status of Consignee of Mortgagor.—The lien of a mortgage on a growing crop is not lost by the wrongful removal of the crop from the land, independent of any agreement, and such lien still exists against the consignee of the mortgagor, unless he can clothe himself with the character of an innocent purchaser for value.

Id.—Recovery of Proceeds of Crop—Pleading—Execution of Mortgage—Denial upon Information and Belief.—In an action by the mortgagee against the consignee of the mortgagor to recover the proceeds of such crop, a denial upon information and belief of the execution of the mortgage sufficiently raises the issue, notwithstanding the defendant had constructive notice of its recordation.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, for Appellant.

G. L. Aynesworth, for Respondent.

KERRIGAN, J.—On September 30, 1912, A. H. Weyant, according to the allegations of the complaint, was indebted to A. C. Crosby, the plaintiff, in the sum of one thousand dollars, evidenced by promissory notes secured by a mortgage on a certain crop of grapes in Fresno County, which mortgage was duly recorded. On the seventeenth day of April, 1913, Weyant entered into a consignment contract in writing, by the terms of which he "assigned, transferred, and agreed to deliver" to the defendant this crop of grapes. Under said contract the defendant was to pack and sell the grapes through the California Fruit Exchange, and after deducting certain enumerated expenses, and a commission of seven per cent on the gross sales, the proceeds were to be paid to Weyant. On June 26, 1913, Weyant assigned all his interest in the said contract to S. L. Weyant, his wife, receiving on account thereof two hundred dollars. Weyant at once gave defendant notice of the assignment to his wife, and the account concerning the grapes when later delivered was kept by the defendant in her name. Prior to the delivery of the grapes,

which was in August, and shortly after the assignment of Weyant's interest in the consignment contract to his wife, he, his wife, and Crosby had an oral understanding that in order to protect the Crosby mortgage the grapes should be shipped and delivered to the defendant in Crosby's name, and the proceeds from the sale thereof should be paid to Crosby and applied by him on account of the payment of the Crosby mortgage. In due time the crop of grapes was delivered by Weyant to the defendant, without, however, stating that he was delivering them for Crosby's account, and he left the defendant under the impression that the delivery was made under the terms of the existing contract of consignment and the assignment thereof to his wife.

The net proceeds due from the sale of the grapes by defendant were the sum of $789.69, which plaintiff claims he is entitled to by virtue of the provisions of the crop mortgage and the delivery thereof to the defendant by Weyant as his agent. Defendant, on the other hand, claims that it is entitled to part of the proceeds of the sale of the grapes because of moneys paid to and on account of Weyant at the time of entering into the contract of consignment and subsequently, and which it was agreed between defendant and Weyant should be reimbursed to defendant out of the net proceeds of the sale of the grapes when consigned and sold, and as to the balance of the proceeds the defendant asserts that it held the same subject to certain attachment proceedings in actions pending against Weyant.

The court found in favor of the plaintiff as to the execution of the mortgage; that the defendant had notice of it, and that the delivery of the grapes to the defendant was for and on account of plaintiff, and rendered judgment in favor of plaintiff for $789.69, the amount of the net returns on the crop of grapes. The defendant's motion for a new trial was denied, and this appeal is from the judgment and the order denying such motion.

The principal points made by the appellant for reversal are that under section 2972 of the Civil Code the plaintiff's mortgage lien on the crops was lost by the removal of the crop from the land, and that there was no proof made in the trial court of the execution or existence of the mortgage or of the amount, if any, due thereunder to the plaintiff.

Section 2972 of the Civil Code is in the following terms: "The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of the mortgagor." The question has heretofore arisen whether the removal of the crop by the mortgagee is such a removal as will destroy the lien, and it has been held that it is not. The reason for the rule thus announced probably is that the mortgagee having taken possession of the crop for the purpose of enforcing his rights, is in the same position as the pledgee of personal property in possession of the pledge, and his lien on the property is of exactly the same quality and nature. In the case of *Campodonico* v. *Oregon Improvement Co.*, 87 Cal. 566, [25 Pac. 763], the question was whether or not there had been such a removal of the mortgaged property as to destroy the lien. There one Dodge had duly mortgaged growing beans and barley to the plaintiff to secure payment of a certain sum of money, which mortgage was recorded. Thereupon Dodge, at the request of plaintiff, the mortgagee, had the property hauled from the land on which it was grown and delivered to the defendant at its warehouse, instructing the person hauling it to store the property in the name of the plaintiff. The receipts for the property, however, notwithstanding the efforts of Dodge to have them issued in the name of the plaintiff, were issued in Dodge's name. The plaintiff did not know of this until October 28, 1888, when he was informed of that fact, and of the further fact that the property had been attached the day before. In upholding the judgment of the lower court in plaintiff's favor the court said: "The lien of respondent's mortgage was not lost by his permitting the mortgagor, Dodge, to haul the mortgaged property from the land on which it was grown, and its storage in defendant's warehouse, under the circumstances disclosed in the findings. (*Byrnes* v. *Hatch*, 77 Cal. 241, 244, [19 Pac. 482].) The neglect or refusal of the defendant's agent to issue a receipt showing that the property was stored in the warehouse for the plaintiff did not change the effect of the agreement, made between plaintiff and his mortgagor, Dodge, as to the way in which it should be stored, so as to destroy the mortgage lien in favor of the assignee of the insolvent, Dodge."

In *Byrnes* v. *Hatch,* 77 Cal. 241, [19 Pac. 482], a crop of hay was hauled to a warehouse by the mortgagor at the request of and as the agent of the mortgagee, who had taken a chattel mortgage on the growing crop. In this situation the court said: "It seems that the lien of the mortgagee on the crop is not lost."

In the case at bar the agreement between the mortgagor and mortgagee that the former should deliver the crop to the defendant in the name of the mortgagee must, when the crop is removed under such agreement and the delivery made, be held to constitute the mortgagor the agent of the mortgagee in such delivery, even though such agent violates his instructions and delivers the crop in his own name. No question here arises of advances made by the consignee to the agent upon the security of the crop after its delivery, in which event other legal principles might find their just application, and estop the mortgagee from insisting upon his rights as against the consignee. Here the advances made by the consignee were made during the time that the crop was still upon the land, and when the consignee was charged with notice of the mortgagee's rights. The consignee will not be permitted to take advantage of the wrong committed by the mortgagee's agent from which it has not suffered.

In what we have said it is assumed that the removal of the crop from the land was under the agreement with the mortgagee, and that the only wrongful act of the mortgagor was in the violation of his further agreement with the mortgagee that the crop should be delivered to the defendant in the mortgagee's name. But, on the other hand, if Weyant in removing the crop from the land purported to do so on his own account, still the defendant is in no better case; for such removal was also wrongful and Weyant could not take advantage of his wrongful act, and his consignee, being a mere agent, is in the same position, unless he can clothe himself with the character of innocent purchaser for value. This, we have seen, the defendant has not done. In the cases of *Wilson* v. *Prouty,* 70 Cal. 197, [11 Pac. 608], and *Martin* v. *Thompson,* 63 Cal. 3, it was held that the tortious removal of the crop by a third person does not destroy the lien of an existing chattel mortgage thereon, and this principle is evidently applicable to a tortious removal by the mortgagor himself.

For the foregoing reasons we hold that under the facts found in this case the net proceeds of the sale of the crop are applicable to the payment of the debt due the mortgagee, and that if all these findings were supported by the evidence the conclusion of the court that the defendant dealt with the crop with notice of and in subordination to the plaintiff's mortgage would have been correct.

The next point made in support of the appeal is that there is no evidence in the record to sustain the finding of the court that Weyant was indebted to the plaintiff in the sum of one thousand dollars evidenced by a promissory note, and to secure payment of which he executed, acknowledged, and delivered to the plaintiff the mortgage in question, and that no payment had been made on account of such indebtedness.

The position of the respondent in answer to this contention is that the allegations of the complaint bearing upon these matters were denied only upon information and belief, and that such denials were insufficient to raise an issue thereon. The trial court apparently adopted this view. In this we think the court erred. While the defendant could not deny on information and belief the recordation of the mortgage, it could so deny its execution and the existence of the debt. The defendant was not a party to the mortgage; and while receiving constructive notice of its contents through its recordation, it was still entitled to put the plaintiff to proof of its due execution, and did so by a denial based on lack of information and belief—the only form of denial it was possible for it to make.

Speaking of the right of a defendant to deny an allegation upon information and belief, Mr. Bliss, in his work on Code Pleading, section 326, says: "The obligation to verify the pleading implies an obligation to state the truth; hence the permission to deny any knowledge or information, etc., is not absolute. If the fact charged is evidently within the defendant's knowledge—as, an act done by himself and within the period of recollection, or where he has the means of information—a denial of information in the language of the statute would be clearly false or evasive, and such an answer should be disregarded."

Applying the principle as thus stated by Mr. Bliss to the present case, the fact charged, viz., the execution of the note and mortgage, was not within the defendant's knowledge; it

was not a party to it and had no means of information. An examination of the record would disclose nothing but the purported execution of the mortgage and the purported existence of an indebtedness secured thereby. In the case of *Humphreys* v. *McCall*, 9 Cal. 59, 62, [70 Am. Dec. 621], the rule is thus laid down: "When the alleged fact is, from its nature, presumptively within the personal knowledge of the defendant, he cannot be permitted to answer upon information and belief, but must answer in the positive form. And where, from the nature of the fact alleged, the knowledge, if any, of the defendant, is presumptively based on information, he is not bound to deny positively, but only 'according to his information and belief.' In this case the transfer from Cooper was the act of a *third* party; and unless it has been expressly alleged in the complaint that defendants knew that fact of their own knowledge, they could only be required to answer according to their information and belief."

None of the cases cited by the respondent go to the extent claimed by him. In *Le Breton* v. *Stanley Contracting Co.*, 15 Cal. App. 429, 433, [114 Pac. 1028], the facts denied for want of information and belief were an adjudication in insolvency and the appointment of a receiver—a case in which the records themselves proved the existence of the facts alleged. And so in *Mendocino County* v. *Peters*, 2 Cal. App. 24, 28, [82 Pac. 1122], where the facts denied were public records, such as the report of the viewers in a condemnation proceeding for a public road, the notice of hearing and various orders of the board of supervisors. In *Mulcahy* v. *Buckley*, 100 Cal. 484, [35 Pac. 144], (which the respondent in his brief characterizes as his best case), it was the record of a claim of lien; and in *Hewel* v. *Hogin*, 3 Cal. App. 248, [84 Pac. 1002], the treasurer of an irrigation district, being sued for the payment of interest coupons on bonds issued by the district, denied on information and belief, the signature of the secretary of the district upon such coupons. Such a denial was in effect the denial by the district, through one of its officers, of the signature of its own secretary—clearly a fact which was presumptively within the knowledge of the treasurer of the district. Moreover, in this case the court found as a fact that the coupons bore the lithographic signature of the said secretary.

We think it plain that the defendant's denial in the case at bar, based upon lack of information and belief, raised an issue, and put the plaintiff to the proof of the note and mortgage and the indebtedness due thereon. There being no evidence introduced on these points the finding of the court is unsupported, and is therefore erroneous.

The judgment and order are reversed, and the cause remanded for a new trial.

Lennon, P. J., and Richards, J., concurred.