[Civ. No. 4758. Second Appellate District, Division Two.—May 14, 1928.]

THE VALLEY BANK (a Corporation), Respondent, v. HILLSIDE PACKING COMPANY (a Corporation), Appellant.

Avery J. Howe for Appellant.

No appearance for Respondent.

STEPHENS, J., *pro tem.*—This action was tried before the court without a jury, judgment was entered in favor of the plaintiff and defendant appeals. To the appeal plaintiff has not seen fit to respond, either orally or by brief.

Anna R. Close and Hattie N. Peckham borrowed $1,000 from plaintiff on a promissory note and secured such note with a mortgage on an orange crop. This was duly recorded. The mortgagors subsequently received advances from the defendant (appellant here) in different sums, amounting in all to $504.43. Concerning these advances appellant's secretary and bookkeeper testified: ''We loaned Mr. and Mrs. Close the money in order to pick and haul their crop. We advanced altogether $504.43. . . . We did not know that there was any crop mortgage upon this fruit, and it was with that understanding that the fruit was delivered to the house. . . . My understanding at that time was that the crop was clear and that the advances would be made as a first lien.'' We are not informed as to the nature of this claimed lien, nor of facts which would enable us to determine whether it was a lien at all. The fruit was delivered to defendant's packing-house and sold, bringing a net return of $727.29; $505.48 of this was applied in cancellation of the sums advanced, leaving the sum of $221.81 subject to the order of court. It appears indisputably from the evidence that the respondent bank, after loaning the money, authorized the delivery of the crop to any packing-house, leaving the selection thereof and the circumstances of the handling of the fruit with the mortgagors.

Appellant contends that the crop mortgage lost its vitality when the crop was removed from the premises, and that, therefore, the judgment is wrong and should be reversed.

As this subject has been fruitful of much litigation and lack of clear understanding, it is perhaps justifiable that the history of the crop mortgage law should be sketched here.

The first legislature of the state enacted the following: "No mortgage on personal property hereafter made shall be valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee." (Stats. 1850, chap. 114, sec. 17.) Under this statute no crop mortgage was good save between the parties thereto, unless legal title to the land upon which the crop was growing was transferred to the mortgagee.

The statute was amended in 1856 (Stats. 1856, p. 87), by adding to the original section a proviso as follows: "provided, that a mortgage upon growing crops, executed, acknowledged and recorded like mortgages upon real estate, shall be valid as against third parties without such delivery of possession; but the lien of such mortgage shall cease as against subsequent purchasers, unless possession of such crops, when harvested, be delivered to the mortgagee, as required in other cases of mortgage of personal property." Thus the requirement of possession by mortgagee is modified by the substitution of a recorded mortgage until the harvest of the crop.

In 1872 the subject of crop mortgages was carried into the code (sec. 2955 et seq., Civ. Code), and all mortgages were thereafter void, except as between the parties, unless recorded.

In 1878, section 2972 of the Civil Code was enacted: "The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of the mortgagor." It will be seen that this section broadens the effectiveness of the lien. Under it a crop lien complying to code requirements is good as against the world, so long as the crop remains on the land (the farm) on which it was grown—even after harvest or conversion to other products. It follows logically that

if the crop happen to be removed through no act or permission or carelessness of the mortgagee it has been removed tortiously, and, therefore, no legal rights should be gained or lost through such act. Accordingly, in *Martin* v. *Thompson*, 63 Cal. 3, and *Wilson* v. *Prouty*, 70 Cal. 196 [11 Pac. 608], the supreme court took this step by deciding that the lien under section 2972 of the Civil Code is not lost through a tortious removal of the crop.

 Again, it follows that the rights of creditors of the mortgagor and purchasers subsequent to removal should not be inferior to the lien if the crop has been removed through consent or lack of reasonable diligence of the mortgagee to protect .his rights after harvest. Accordingly, as in the case of *Horgan* v. *Zanetta*, 107 Cal. 27 [40 Pac. 22], the court said that when the crop was removed from the premises the "mortgage had *prima facie* been extinguished," and in determining that it had actually been extinguished in the cited case the court remarked: "It does not appear that the mortgagee used any care or diligence in looking after the crop when harvested or paid any attention to the grain until after it had been attached . . . and nearly a month and a half after [the owner] had removed it from his land." To the same effect is *Ramsey* v. *California Packing Corporation*, 51 Cal. App. 517 [210 Pac. 481]. This case is surprisingly like the instant case.

Another contingency has arisen which also has been met by the courts. When the crop is harvested it must be cared for, and few farms are equipped to care for crops in the interim from harvest to use or sale. The mortgagor's removal without consent of the mortgagee would be tortious. Consent that he may do so would extinguish the mortgage lien. But originally possession of a chattel was required to be and remain in the mortgagee or the mortgage became extinguished. Recordation of the mortgage was substituted for possession so long as the crop remained on the ground, and no longer. When met with this situation the courts, through sound reason, decided that when the possession of the chattel uninterruptedly succeeds the period of protection by recordation, the lien is not to be distinguished. (See *Summerville* v. *Stockton Milling Co.*, 142 Cal. 529 [76 Pac. 243], and *Crosby* v. *Fresno Fruit Growers Co.*, 30 Cal. App. 308 [158 Pac. 1070].)

In the instant case the removal of the crop from the land constituted a *prima facie* extinguishment of the lien of the mortgage, and, as stated in *Ramsey* v. *California Packing Corporation, supra,* "it rested upon the mortgagee, if he would still enjoy the benefit of his mortgage security, to rebut that presumption by showing that the crops were removed without his knowledge and consent, and that it was, therefore, a tortious removal." Or, as stated in the same case on the next succeeding page: "This agreement [in the instant case the consent to remove to any packing house] amounted in practical effect to a substitution of the personal obligation of the mortgagors for the security of the mortgage." Here the money was advanced by appellant and the debt incurred while the fruit was on the ground. So far the mortgage, being recorded, was ahead of it. However, the fruit was removed and sold by the mortgagor under permission of the mortgagee, but not under the name or direction of the mortgagee, and the receipts were paid to appellant, who, with the mortgagor's consent, applied sufficient thereof to extinguish the loan made for the purpose of picking and hauling the crop. It is clear that the application of the money to appellant's loan was after the fruit had left the lands upon which it had grown, and that this removal, being with the consent of the mortgagee bank and without its having taken any steps to protect its mortgage lien, freed the fruit from the mortgage encumbrance. It follows that the money received therefor was released from the operation of the lien as well, except as between the original parties to the loan.

Judgment reversed.

Works, P. J., and Thompson, J., concurred.