[Civ. No. 6834. Second Appellate District, Division Two.—July 28, 1931.]

H. B. RENO, Appellant, v. A. L. BOYDEN COMPANY (a Corporation) et al., Respondents.

J. S. LePage for Appellant.

R. D. Wickham and John N. Helmick for Respondents.

ARCHBALD, J., *pro tem.*—Prior to June 1, 1926, plaintiff and defendant Fassel owned together a certain apiary and equipment pertaining thereto, located in San Bernardino County, also some honey and wax at the apiary and certain honey stored with the defendant A. L. Boyden

Company in Los Angeles County. Apparently about that date plaintiff sold his half interest in the apiary, equipment, wax and honey to Fassel, who executed and delivered his promissory note in the sum of $4,500 therefor, and also executed and delivered a chattel mortgage covering said personal property to secure said note, dated June 1, 1926, but actually executed and acknowledged July 6, 1926, and recorded in Los Angeles County July 9, 1926, and in San Bernardino County August 3d of that year. A portion of the honey stored with defendant company was sold by defendant Fassel to said A. L. Boyden Company after the recording of said mortgage in Los Angeles County, and suit was brought by plaintiff against both to recover damages alleged to have been sustained by reason of said sale. The case was tried before the court, a jury having been waived, and at the close of plaintiff's evidence motion was made by each defendant for nonsuit on the ground that the evidence showed that plaintiff had given his consent to the sale. Such motions were granted and from the judgment and order plaintiff appeals.

Appellant contends that the evidence shows a consent with a condition precedent, viz., that he was to be first paid $500, and that in consequence the court erred in granting said motions. Plaintiff was asked: "Did you ever give Mr. Boyden or Mr. West or anyone representing the company permission to sell or dispose of this honey? A. No, sir; not without written notice from me." It nowhere appears in the evidence that the sale was made by the Boyden Company, but it does appear that such company bought the honey from defendant Fassel, and the answer given is eminently correct. On cross-examination plaintiff was asked if defendant Fassel had talked with him about a permit to sell the honey, to which he replied: "He asked me many times if he couldn't sell it. I always refused. Q. You told him absolutely he couldn't sell it? A. Absolutely." Plaintiff was then shown a letter dated November 29, 1927, which he said was in his handwriting and which contained the following language: " . . . & don't forget that I give you permission to sell honey & if you sold all I was to rec. 500.00 & as it stands I never even rec. 5c can you blame me for not approving of such

business." Asked as to what he meant by that language, the witness said: "I didn't give you [*sic*] permission to sell anything unless you give me $500 and interest. Q. You did give him permission to sell the honey, did you not? A. If he paid me the money; but he never did. Q. You gave him permission to sell the honey providing he paid you? A. $500 cash and all interest. But under no other condition." Asked for the conversation between himself and defendant Fassel at the time he gave such permission, he said: "Mr. Fassel did ask me several times about selling the honey. I told him the last time he positively couldn't sell that honey unless he paid me $500 and all interest to date. Other than that I wouldn't permit him to sell it at all. Q. The $500 he was to pay to you was to come out of the proceeds? A. I don't know where it was to come from. As long as he paid me I didn't much care where it came from. Q. You expected him to sell the honey and get $500 and turn that over to you, was that it? A. Yes." The letter referred to was introduced in evidence and it appears therefrom that it was in reply to a "nasty letter" which plaintiff had received from defendant Fassel. In the beginning of the communication plaintiff says: "Well from all I can read in your letter you are quite in arms at this time. Am sorry it has to be as is but all I have asked for is the interest due me. Yes, you have paid 200.00 & there is still 100.00 due & it was due June first 1927. Why didn't you pay your interest when you sold the honey? No, you pay everybody but me & I guess you thought I could wait because I was easy."

Taking the testimony of plaintiff in its entirety and giving it the most favorable inference, it clearly shows that he gave defendant Fassel permission to sell the honey on the latter's promise to pay him out of the proceeds $500 and the interest due, and that any language used by plaintiff which, taken by itself, might be susceptible to the inference that the consent above referred to was based on the condition that plaintiff first received $500 is but a conclusion of the latter and creates no conflict in the evidence. On the other hand, it corroborates the testimony of Fassel to the effect that he did not sell the honey until after plaintiff had given him permission

so to do. In our opinion no other conclusion could be drawn from plaintiff's evidence. Even assuming that error was committed in granting the motions here in question, the only effect we can see that it had was to prevent a judgment on the merits in favor of defendant; and from an examination of the entire record we fail to see where any substantial rights of appellant were affected. Under the circumstances even if it is error it should be disregarded. (Sec. 475, Code Civ. Proc.)

Fassel having sold with plaintiff's consent, there could be no conversion, either in the sale by him or in the purchase by his co-defendant, as it was clearly intended under the permission granted that upon such sale the title should pass to the purchaser free of the lien of the mortgage above mentioned and that the proceeds of the sale were to be received by Fassel, who in turn was to pay to plaintiff $500 thereof. As was said in *White Mountain Bank* v. *West,* 46 Me. 15, 20, concerning a similar situation, "from the time of sale the lien of the mortgage was extinguished and the mortgagee was left with no security but the personal promise of the mortgagor to pay the proceeds to him." The rule laid down, therein was expressly approved by our Supreme Court in the case of *Maier* v. *Freeman,* 112 Cal. 8, at page 12 [53 Am. St. Rep. 151, 44 Pac. 357]. In that case there was a writing appointing the mortgagor agent of the mortgagee to take six cars of sheep from Arizona to California, "he to turn over the proceeds of said sheep to us." No authorization to sell was expressly conferred by such writing, but such authority might be inferred therefrom by reason of its reference to the disposition of the proceeds of sale. We know of no law requiring such authorization to be in writing, nor has any been cited us by appellant, although he calls attention to the fact that in this case it is not in writing. The rule seems to be that a mortgagor may make an absolute sale of the mortgaged property with the mortgagee's verbal consent. (Sec. 456, Jones on Chattel Mortgages, 5th ed.) Section 538 of the Penal Code, so far as applicable here, provides in substance that one who sells any part of mortgaged property is guilty of larceny and punishable accordingly, "unless . . . at or before the time of making such sale . . . such mortgagor informs

the person to whom such sale . . . is made of the existence of the prior mortgage, and also informs the prior mortgagee of the intended sale, . . . in writing, by giving the name and place of residence of the party to whom the sale . . . is to be made.'' On the face of such statute it is clear that its purpose is to protect not only the purchaser of mortgaged property by giving him notice of the existence of the mortgage, but the mortgagee as well, by giving him the name and address of the intended purchaser so that he can trace his property. ▮ But where, as here, the property is sold with the consent of the mortgagee, there would seem to be no reason for such requirement, as the latter waives his lien and the buyer is protected by the absolute sale.

As was said in *Gage* v. *Whittier*, 17 N. H. 312, 319, of a penal statute in New Hampshire, which prohibited the sale by the mortgagor of mortgaged property without the written consent of the mortgagee entered upon the mortgage and upon the margin of the record thereof, ''It was not part of its design to interpose any restraint upon the alienation of personal property, with the assent of the mortgagee, against whom a title may be acquired, as it would seem, as well since as before the statute, by any proper evidence of his having assented to the sale, or of his having become a party to it.'' In the case of *People* v. *Phillips*, 30 Cal. App. 31 [157 Pac. 1003, 1004], the court says that ''the giving of mere permission to sell does not work a waiver of the right to have notice of sale furnished under section 538, Penal Code''. The Supreme Court, however, in denying an application for hearing after such decision, says: ''In denying the application we do not wish to be understood as holding that if permission to sell was given by the mortgagee, it would not operate as a complete waiver of the requirement of the statute that notice of the sale shall be given to the mortgagee.'' (*People* v. *Phillips, supra*, p. 35.)

▮ Appellant urges that there was no consideration for the consent given by him. The honey sold was apparently only a small part of the property covered by the chattel mortgage, and so far as the evidence shows the note was not due. Plaintiff accepted the promise of the mortgagor to pay him $500 from the proceeds of sale on

the principal of the note, which would seem to be a good consideration notwithstanding the fact that Fassel did not live up to his promise, if in fact he did not.

Judgment affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.