[Civ. No. 5530. Third Appellate District.—July 15, 1936.]

I. S. CHAPMAN & COMPANY (a Corporation), Appellant, v. HOWARD E. ULERY et al., Respondents.

O'Connor & Findlay for Appellant.

Gibson, Dunn & Crutcher, and Keith Bullitt for Respondents.

PULLEN, P. J.—For some time prior to June 10, 1926, Howard E. Ulery and his wife were the owners of a citrus grove near Pomona. Three promissory notes were executed by them, one in June, 1926, one in May, 1927, and one in May, 1928, each payable one year from date, aggregating $500, in favor of I. S. Chapman & Company, and at the same time as security for the repayment thereof, executed chattel mortgages upon the fruit growing and to be grown on the lands of the promisors.

Each of the crop mortgages given by Ulery to I. S. Chapman & Company as security for the three promissory notes, provided that Howard E. Ulery should take care of the crops and " . . . harvest, pick, gather and box and deliver immediately into the possession of a marketing association, packing house or other buyer, such quantity of said citrus crop as will when sold produce enough proceeds . . . to pay off . . . said promissory note . . . ".

In addition to the usual provisions found in a promissory note, it was specified in each of these notes that in the event said ranch should become encumbered, the principal and interest of the notes should immediately become due and payable.

In September, 1928, Mr. and Mrs. Ulery executed to respondent Taylor Milling Company a promissory note for $3,500 secured by a deed of trust upon the orchard property. Ulery, a member of, and shipper through the Pomona Fruit Growers Exchange, gave to Taylor Milling Company an assignment of the proceeds from the crops grown during the season of 1930–31, which assignment was duly accepted

by the exchange. In January, 1932, Ulery again assigned to Taylor Milling Company the entire proceeds to be derived from the 1931–32 crop, which assignment was likewise accepted by the exchange. The proceeds from these crops were not paid over to Taylor Milling Company, but are now held awaiting a determination as to who, between I. S. Chapman & Company claiming under its chattel mortgages, and Taylor Milling Company by an assignment, is entitled thereto.

On December 13, 1932, and after the execution of the above notes and crop mortgages, Mr. and Mrs. Ulery conveyed the ranch to Taylor Milling Company in satisfaction of the deed of trust hereinbefore referred to. Demand was made by I. S. Chapman & Company upon the Pomona Fruit Growers Exchange for the proceeds from the sale of the fruit grown upon the ranch by virtue of its crop mortgages, and it claims to be entitled thereto either upon the ground that Ulery and Pomona Fruit Growers Exchange were acting as its agents in the removal and marketing of the crops, or that the removal of the crops by Ulery and the exchange were tortious, and therefore the lien of I. S. Chapman & Company on the fruit when removed from the ranch attached to the proceeds as the substituted security under the mortgages.

Section 2972 of the Civil Code provides:

"The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of mortgagor."

It seems to be clearly established that if a mortgaged crop is removed by the mortgagor in violation of an agreement between the mortgagor and the mortgagee that the crop shall be delivered to a packing house in the name of the mortgagee, the lien in such event is not lost, and the crops, when so removed, remain subject to the lien of the mortgage. Such is the rule in *Crosby* v. *Fresno Fruit Growers' Co.*, 30 Cal. App. 308 [158 Pac. 1070]. In that case the mortgagor and mortgagee agreed that the crops should be removed by the mortgagor and delivered to the Fresno Fruit Growers' Company in the name of the mortgagee; that said company then to sell the fruit and pay the proceeds to the mortgagee. The mortgagor violated this agreement and delivered the fruit to the Fresno Fruit Growers' Company in his own name. It was held that the removal and delivery in the

name of the mortgagor in violation of the agreement with the mortgagee was tortious, and the Fresno Fruit Growers' Company received the fruit subject to the mortgage and that the mortgage lien was not lost. This rule will be found expressed also in the cases of *Pacific Fruit Exchange* v. *Booth Co.,* 103 Cal. App. 54 [283 Pac. 944]; *Campodonico* v. *Oregon Improvement Co.,* 87 Cal. 566 [25 Pac. 763]; *Campodonico* v. *Santa Maria etc. Co.,* 86 Cal. App. 339 [260 Pac. 830].

■ The instant case differs from the facts in the foregoing cases in that here the crops were removed under an agreement that the mortgagor might pick and harvest the same without any restriction upon the manner of removal or the place or sale.

In support of the second contingency within which the case at bar falls, that is, where the mortgagee agrees that the mortgagor may deliver the fruit to a market agency who is to sell it and pay the proceeds to the mortgagee, the rule is that such agreement constitutes a waiver of the mortgage lien and a substitution therefor of the mortgagor's personal obligation. This is the holding in *Ramsey* v. *California Packing Corp.,* 51 Cal. App. 517 [201 Pac. 481], wherein there was an agreement between the mortgagor and the mortgagee that the mortgagor should deliver the crops to any marketing association for sale and that the proceeds of the sale should then be paid over to the mortgagee. In the instant case the crop mortgage provided that Ulery should care for the crops, and after picking the same, deliver to the possession of a marketing association such quantity of said crop as would, when sold, satisfy the promissory note. It is true, as pointed out by appellant, that *Ramsey* v. *California Packing Corp., supra,* might be distinguished in that the real point there decided involved the validity of the crop mortgage, and an innocent purchaser was involved, and the selling agent embezzled the proceeds, but the reviewing court in affirming the judgment of nonsuit in the action brought by the mortgagee against the packing company to whom the mortgagor had sold the crops, said:

" . . . obviously, if the crops were removed by and with the consent of the plaintiff, then they were not wrongfully or tortiously removed and in that case the lien of the mortgage ceased upon such removal by operation of law. This proposition follows from the terms of section 2972 of the

Civil Code. . . . This agreement (allowing the mortgagors to sell the mortgaged crops and turn over the proceeds of sale to the plaintiff and Emerson) amounted in practical effect to a substitution of the personal obligation of the mortgagors for the security of the mortgage . . . ''

In *Valley Bank* v. *Hillside Packing Co.*, 91 Cal. App. 738 [267 Pac. 746], a mortgaged crop was delivered by the mortgagor to the packing company, and part of the proceeds applied to certain advances made to the mortgagor by the packing company. In holding that the removal and sale of the crop with the consent of the mortgagee not only released the crop from the lien of the mortgage but also released the proceeds of sale from operation of the mortgage lien, the court said:

''It appears indisputably from the evidence that the respondent bank (mortgagee), after loaning the money authorized the delivery of the crop to any packing house, leaving the selection thereof and the circumstances of the handling of the fruit with the mortgagors . . . It is clear that the application of the money to appellant's loan was after the fruit had left the land upon which it was grown, and that this removal, being with the consent of the mortgagee bank and without its having taken any steps to protect its mortgage lien, freed the fruit from the mortgage encumbrance. It follows that the money received therefor was released from the operation of the lien as well, except as between the original parties to the loan.''

In *Maier* v. *Freeman*, 112 Cal. 8 [44 Pac. 357, 53 Am. St. Rep. 151], certain sheep were mortgaged. Before the mortgage debt became due the mortgagee entered into an agreement with the mortgagor that he should, as their agent, sell the sheep and turn the proceeds over to said mortgagee by depositing the proceeds in a bank of their selection. The Supreme Court held that such an agreement evidenced the intention of the mortgagees that upon the sale of the sheep by the mortgagor the title thereto should pass to the purchaser free of the mortgage lien, and consequently the lien on the sheep was not transferred to the proceeds in the hands of the purchaser, and therefore, as between the mortgagees and certain attaching creditors, the attaching creditors were entitled to the money derived from the sale of the sheep.

It is obvious that when Ulery, acting under the express agreement between himself and I. S. Chapman & Company, caused the fruit to be removed and marketed through the exchange, the mortgage lien of I. S. Chapman & Company was thereby lost, and the personal obligation of Ulery substituted for the security of the mortgage.

▮ It is also contended by respondents that the lien of the crop mortgage is barred by the statute of limitations, and that I. S. Chapman & Company has no enforceable rights thereunder. The first two notes expired by the provisions of section 337 of the Code of Civil Procedure. By virtue of the execution of the trust deed on September 1, 1928, under the agreement contained in the promissory note Taylor Milling Company was entitled to plead the statute of limitations, which it did in its answer.

In *Brandenstein* v. *Johnson,* 140 Cal. 29 [73 Pac. 744], it was held that "when third persons have subsequently acquired interests in the mortgaged property they may invoke the aid of the statute as against the mortgagee, even though the mortgagor, as between himself and the mortgagee, may have waived its protection.

Section 2911 of the Civil Code provides: "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, an action can be brought on the principal obligation."

It seems clear, therefore, that all rights of the appellant, to the proceeds of the 1930–31, 1931–32 and 1932–33 crops have become barred by the statute of limitations so far as they rest upon the promissory notes and the chattel mortgages securing them.

▮ Some claim also seems to be made by I. S. Chapman & Company upon the 1932–33 crop proceeds, but inasmuch as the Taylor Milling Company acquired title to the ranch December 13, 1932, by deed of conveyance, it thereupon acquired title to all of the fruit then growing upon the ranch subject only to any enforceable lien held by I. S. Chapman & Company by virtue of its crop mortgage. Therefore Taylor Milling Company as owner became legally entitled to the proceeds of the 1932–33 crop subject only to any rights which I. S. Chapman & Company might have under their mortgages, but inasmuch as the lien upon the crop proceeds as against Taylor Milling Company was barred by the pro-

visions of section 337 of the Code of Civil Procedure, I. S. Chapman & Company have no claim to that crop.

For the reasons therefore that the liens on the mortgaged crops were lost upon the removal of the crops from the ranch, pursuant to authority given him in the crop mortgages, and for the further reason that said crop mortgages are barred by the statute of limitations, Taylor Milling Company is entitled to the proceeds from said crops. The judgment appealed from is affirmed.

Plummer, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 10, 1936.