The **QUAKER OATS COMPANY**, a corporation, Appellant,

v.

W. E. **McKIBBEN**, A. B. **Carter**, O. R. **Lewis** and Charley **Geers**, Appellees.

The **QUAKER OATS COMPANY**, a corporation, Appellant,

v.

Charley **GEERS**, Appellee.

No. 14471.

United States Court of Appeals Ninth Circuit.

March 10, 1956.

Maury, Larsen & Hunt, Los Angeles, Cal., for appellant.

Harry B. Ellison, Downey, Cal., Frank C. Nimocks, Downey, Cal., Charley Geers, in pro. per., Colton, Cal., for appellees.

Before STEPHENS and CHAMBERS, Circuit Judges, and TAYLOR, District Judge.

TAYLOR, District Judge.

The above-entitled causes are before this Court on appeal from judgments of the United States District Court for the Southern District of California, Central Division. Said causes were tried jointly in the district court and have been likewise presented and heard here. Appellant brought the actions below for damages arising out of the several defendants' alleged conversion of 1500 turkeys each of which was the subject of a chattel mortgage and upon which appellant thereby had a lien. Said causes were tried by the court sitting without a jury, and following the trial judgment was entered for the appellees in each case.

The facts of the cases may be outlined as follows. Appellant is in the business of providing poults for turkey growers and furnishing feed for the turkeys

until maturity. To protect the money it advances for poults and feed, it takes chattel mortgages on the turkeys. In this case, appellant furnished poults and feed to certain turkey growers, hereinafter referred to as the Growers. To secure the advances of credit, appellant took its customary chattel mortgages from the Growers and the said mortgages were duly acknowledged and recorded. At the time of the execution of the mortgages, an additional contract was entered into between the parties by which Growers agreed not to sell any of the turkeys without first having obtained appellant's written consent to do so. The contract, however, evidently was never recorded, though there was a similar provision in the mortgages which were.

Appellee Geers is a huckster in the business of buying turkeys from growers, transporting same to market and selling them to processors. The processors then slaughter the turkeys and sell them either to wholesalers or retailers for ultimate consumption by the general public. Upon their maturity, hucksters purchased the particular turkeys involved in these actions from the Growers at their ranches. At no time did appellant give its consent in writing to the transactions. Payment was by checks made payable to appellant and the particular Growers jointly. The hucksters then moved the turkeys from the Growers' ranches and sold them to McKibben, Carter and Lewis who are processors and appellees here. Said appellees had no actual notice of the chattel mortgages. Appellee Geers was one of the said hucksters.

■ The checks given by the hucksters in payment for the turkeys were turned down by the drawee bank for the reason that there were not sufficient funds in the account. Certain of said checks, however, were subsequently paid and it is only with the unpaid remainder that we are here concerned. The foregoing occurred in California, and the law of that state determines the legal rights of the parties.

The question presented is whether appellant-mortgagee had a cause of action against the huckster and the processors for conversion of the turkeys.

■■ Conversion is generally defined as, "An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights," or as "Any unauthorized act which deprives an owner of his property permanently or for an indefinite time." Black's Law Dictionary, Fourth Edition, 402. While it is well settled and uncontested that a mortgagee may, under proper circumstances, maintain an action against a subsequent purchaser from the mortgagor for damages arising out of conversion of mortgaged personalty, "a mere creditor may not, on the theory that he is proceeding by creditor's bill, sue persons who have converted his debtor's property, and obtain a judgment against them, as if he were the owner of the cause of action." 53 Am.Jur., Trover and Conversion, § 143.

■ In the case at bar the trial court held that appellant waived its right under the mortages to require that the Growers obtain its consent in writing before selling the turkeys. It also held that appellant had, by an implied agreement, given the Growers permission to sell directly and without written consent so long as any check taken in payment was drawn to its benefit as well as to the particular grower's. There is evidence in the record indicating that such was the general practice of feed companies in the area as regards the turkey industry. Further, there is evidence in the record that such was the well known practice of this appellant at the time of the transaction in question and had been for several years preceding. In more particular, it is uncontroverted that appellant accepted the checks in question and endorsed them, only to complain of the dealings for the first time upon the refusal of the drawee bank to pay the

checks. The record discloses ample proof to sustain the trial court in this regard.

 Inasmuch as the transactions in question were entered into by the Growers pursuant to agreements with the appellant that they might sell the mortgaged property and accept payment by check with appellant designated as one of the payees, said transactions extinguished appellant's liens under the mortgages. After the transactions, appellant was, so far as this litigation is concerned, in the position of a general creditor, having substituted the Growers' personal obligations for the security of the mortgages. As one of the consequences of this alteration of its position, appellant lost its right to sue for conversion. Maier v. Freeman, 112 Cal. 8, 44 P. 357; Reno v. A. L. Boyden Co., 115 Cal.App. 697, 2 P. 2d 214; Kuehn v. Don Carlos, 5 Cal.App. 2d 25, 41 P.2d 585; I. S. Chapman & Co. v. Ulery, 15 Cal.App.2d 452, 59 P.2d 602.

We see no merit in appellant's contention that its consent lent itself only to *successful* sales by the Growers. In permitting the Growers to sell the turkeys without its written consent, appellant, under the circumstances of these cases, assumed all the risks of a general creditor. An analysis of the rights of the Growers is beyond the scope of these cases since the Growers are not parties. The right of possession in the circumstances necessarily imports transfer of at least a voidable title.

The general practice of accepting checks in the fashion these were received was consented to via the implied agreements. There is nothing of substance to be found in the record indicating that the trial court should have further found that appellant consented to such sales by the mortgagors and that it somehow absolved itself of the risks attendant upon dealing in the market place through the medium of commercial paper. The trial court did not err in finding that the mortgagors were authorized to transact business as they did, accepting the hucksters' checks as payment. Likewise, the Court correctly found that, having consented to such traffic in personal checks, appellant assumed the risk that the paper its debtors accepted might be worthless.

Since, in the final analysis, the only substantial question presented by these appeals is an issue of fact as to the consent and waiver by mortgagee, and since the trial court's findings on those matters are sufficiently supported by the evidence, the judgments below should be, and hereby are, affirmed.

Affirmed.