[Sac. No. 4343. In Bank.—July 28, 1930.]

T. J. BURROW et al., Appellants, v. JOSEPH CARLEY et al., Respondents.

Charles P. Snyder and William G. Snyder for Appellants.

Virgil M. Airola, Rowan Hardin and Olin L. Berry for Respondents.

PRESTON, J.—The judgment is affirmed.

This action was brought by plaintiffs to quiet title to and enjoin defendants from trespassing upon the northwest ¼

of northwest ¼ of the southwest ¼ and west ½ of northeast ¼ of northwest ¼ of southwest ¼ of section. 32, township 3 north, range 14 east, M. D. M., a fifteen-acre tract of land. The land itself possessed only a nominal value, the real purpose of the action being to have determined the location upon the ground of the common boundary line between section 31 and 32 and of Moaning Cave, a natural wonder, and to secure the ownership thereof.

The facts are shown by the evidence and were found by the court to be substantially as follows: Defendant Addison Mills Carley, who was born near by and had known of said cave since boyhood, first explored it in August, 1921, together with defendant Malatesta. About Christmas of the same year he again explored it with his father and defendants Eltringham and Malatesta and thereafter took steps to determine whether he could secure title to it. Being led to believe that it was situated within a vacant forty-acre tract adjacent to the land in controversy, he obtained a patent thereof on February 6, 1923, in the name of Malatesta under an agreement between said three explorers whereby they were to own said natural wonder in equal shares, operate it jointly and divide the expense of developing it. Malatesta thereafter duly executed deeds conveying to Carley and Eltringham their respective undivided one-third interests therein. Said forty-acre tract is described as the northeast ¼ of the southeast ¼ of section 31, township 3 north, range 14 east, M. D. M. Defendants Joseph Carley and Kate Carley are the parents of defendant Addison Mills Carley and were joined in the action only because of their acts as his agent. The words "defendants and respondents" as used herein therefore refer to said three original explorers, Addison Mills Carley, Clarence W. Eltingham and Dan Malatesta.

Early in 1922 defendants started extensive improvements in said cave for the purpose of exhibiting it to the public as a business. Their expenditures, shared equally, aggregated some $10,000. They constructed a roadway leading to the cave, several miles of power transmission line, a stairway to a shelf in the large chamber thereof and a steel tower, with spiral stairway, located within the cave itself. During this construction work C. A. Halbert, the owner of a large adjoining tract of land in section 32, which included the

parcel here in question, visited the cave, went down into it and observed the improvements. About April or May, 1922, in conversation with defendant Eltringham and in response to a rumor that he was up there to survey said section line between the properties, he assured Eltringham that if the cave happened to be on his property he would not hinder them in any way because he himself would never have explored it. The substance of this conversation was reported to the other defendants and, acting upon the assurance and representations of Mr. Halbert, they proceeded with their work. In October, 1922, the cave was thrown open to the public and the business immediately started to bring in returns; it was conducted jointly by defendants, especially on Sundays and holidays they all assisted in showing people through the cave. A register was kept for guests and weekly division made of the money taken in. Bills were paid in the name of Moaning Cave or Moaning Cave Co.

Thereafter and on November 26, 1924, a written lease option agreement was entered into between Malatesta, Eltringham and these plaintiffs, whereby the former undertook to grant to plaintiffs an option to purchase their undivided two-thirds interest in the cave "together with a forty-acre tract . . . within which the . . . cave is located" for the sum of $32,200. Plaintiffs were given the right of immediate possession; time was declared to be of the essence of the agreement and they were required to pay several installments of $50 each and thereafter the sum of $100 a month for twenty months and the balance within other specified periods of time. The contract was to terminate at once upon default in the payment of any installment of principal or interest. Under this agreement plaintiffs immediately entered and took possession of the cave and so continued up to the time of trial of this action, being jointly engaged during said period with Addison Mills Carley in operating the business of exhibiting it to the public. No change took place in the manner of conducting the enterprise except that the mother of Carley handled the payment of bills in place of Eltringham and notices of nonresponsibility under section 1192 of the Code of Civil Procedure were posted at the cave and recorded by defendants, covering their respective interests therein.

In April, 1925, however, plaintiffs, acting in their own behalf and without informing any of the other interested parties, caused a survey to be made of the land surrounding the cave for the alleged reason that the common boundary line between said sections was represented as being east of the cave; yet they were contemplating the expenditure of a considerable sum for erection of a club-house and other improvements; therefore, for their own protection they employed the county surveyor of Calaveras County to make said survey, which indicated that the structures as planned would be on the property of Mr. Halbert; hence they immediately negotiated with him for the purchase of a portion of his property. For $300 they purchased ten acres from him, recording their deed thereto on April 20th, and, after a further survey, they purchased five additional acres for the sum of $500, with the proviso that if the cave should prove to be on his land he should receive as long as he lived five per cent of the gross proceeds of admissions to it. These fifteen acres comprise the entire tract, the subject of this action.

During the following month, May, 1925, plaintiffs refused to pay their portion of the electric light bills and federal tax on sums collected from admissions to the cave, although .they continued to make monthly payments as required by said lease and option until January, 1926, several months after the commencement of this action, at which time, by letter, they asserted independent ownership of said cave in themselves, stated the relation of landlord and tenant to exist between Carley and themselves and failed to pay to Malatesta and Eltringham the then installment of $100 due under said option agreement.

Meanwhile, and on June 5, 1925, Addison Mills Carley had brought an action, naming these plaintiffs as defendants, for the partition of said forty-acre tract, alleging that Moaning Cave was situated within it. Plaintiffs, in response thereto, instituted the present suit on June 29th, for the aforesaid purpose of obtaining an injunction against defendants to prevent them from trespassing upon said fifteen-acre tract purchased from Halbert, alleging that the cave was situated therein and not in said forty-acre tract. On September 14, 1925, this suit was amended into an action to quiet title. The amended complaint alleged plain-

tiffs' ownership in fee of said fifteen-acre tract and the location therein of said cave according to said survey and section boundary line. The original defendants, Addison Mills Carley and his parents, were alleged to have trespassed upon the premises and interfered with plaintiffs' ownership thereof. Upon the trial, however, by stipulation, Malatesta and Eltringham, as claimants of an undivided two-thirds interest in the cave, were added as defendants. At the conclusion of the trial, over plaintiffs' objection, defendants were permitted to file an amended answer to conform to proof. The joint answer and cross-complaint of Malatesta and Eltringham and the separate answer and cross-complaint of Carley set up three separate defenses: First, a denial of the allegations of the amended complaint respecting the location of the cave, thus raising an issue as to the boundary line between said tracts and as to the situation of the cave with respect thereto; second, a separate affirmative defense alleging estoppel against plaintiffs and their predecessors in interest to claim that the cave was located without the boundaries of said forty-acre tract or within said fifteen-acre tract; third, a prayer by cross-complaint for affirmative relief against plaintiffs based upon the plea that the confidential relationship existing between the parties impressed a trust for the benefit of defendants upon the property purchased from Halbert, entitling said defendants, upon payment of their proportionate share of the purchase price, to a conveyance thereof.

The court found the boundary line between said sections 31 and 32 to be as contended for by plaintiffs, thus fixing the location of the cave within said fifteen-acre tract. It then, however, further found in favor of defendants upon their cross-complaint and special defense of estoppel. In other words, the court found that while plaintiffs were in possession of said cave and operating it jointly as co-owners and cotenants with Carley, they secured information that it was not located within said forty-acre tract, which information they refused and neglected to impart or disclose to Carley, but secretly and fraudulently, without his knowledge, consent or acquiescence, proceeded to negotiate for and purchase in their own names alone the land within which said cave was believed or learned to be located; that said purchase was made and title taken in trust for said Carley

as to an equal or undivided one-third interest therein. The court further found that plaintiffs had held all their rights to and possession of said cave by virtue of said lease and option, which rights were contingent upon payment to Malatesta and Eltringham of the installments therein provided; that they had defaulted in payment of due installments and failed to surrender the premises; that they had likewise withheld from Malatesta and Eltringham the facts as to said purchase; that their relation with these parties was that of vendor and purchaser as well as landlord and tenant and that said secret purchase was also made in trust for Malatesta and Eltringham as to an undivided two-thirds interest therein. The court further found that defendants were each desirous and willing and offered and tendered to the court his proportionate share of said purchase price, to wit: $800, so paid by plaintiffs and that plaintiffs had constructed a club-house on said property which it would be equitable to allow them to retain and remove. It also found that said Halbert was at all times aware of the existence of said cave, its exploration and improvement, but that said explorers had relied on his representations that he would not disturb them and had not trespassed on said property owned by him. The court then concluded as a matter of law that plaintiffs were estopped from asserting any right, title or interest in or to said Moaning Cave under any deed or other instrument from Halbert or otherwise than under and by virtue of said option and lease agreement; that defendants were entitled to judgment that plaintiffs held the title acquired by them from Halbert to said fifteen-acre tract in trust for said Addison Mills Carley, Malatesta and Eltringham, respectively, in equal undivided portions and ordering plaintiffs within thirty days to deliver to each of said defendants a conveyance of his said share, or upon their failure, that the clerk of the court deliver such deed, subject to whatever rights plaintiffs might have under said lease and option agreement; that each of said defendants pay plaintiffs $266.67, being his one-third of said purchase price of $800; that plaintiffs retain and be entitled to remove said club-house; that the division line between said sections be adjudged to be located as described in finding XIV and that

defendants have their costs. A judgment was entered accordingly and plaintiffs thereupon prosecuted this appeal.

Appellants urge numerous points, none of which we are able to sustain. They are to some extent already answered by the above rather lengthy *résumé* of the facts and the remainder will be disposed of briefly under two or three main headings. No further discussion is necessary of our conclusion that the findings and judgment are amply supported by the evidence.

First, is the contention that by virtue of appellants' allegation in their complaint of ownership of said fifteen-acre tract, and defendants' failure to deny it, such ownership is admitted by the pleadings and was and is not an issue to be determined by the court. However, in response to the allegation that "plaintiffs are the owners in fee" of said tract, defendants answered that "they have no information or belief upon the subject sufficient to enable them to answer the allegations thereof and placing their denial upon that ground deny that plaintiffs are or ever have been the owners in fee or otherwise" thereof. The rule that an allegation with reference to a matter which is, from its nature, presumptively within the personal knowledge of a defendant or ascertainable from an inspection of public records within his reach, may not be controverted upon information and belief, is not applicable here. The instruments under which plaintiffs' claimed, with recordation references, were not set forth. The pleading merely alleged plaintiffs' ownership in fee as an ultimate fact, which fact was not necessarily a matter of public record but was subject to alteration by unrecorded instruments or other matters without the actual or presumptive knowledge of defendants. The case of *Crosby* v. *Fresno Fruit Growers' Co.*, 30 Cal. App. 308 [158 Pac. 1070], supports the holding that by these pleadings issue was properly joined on said question.

Next, appellants contend that the place of location upon the ground of the common boundary line between said sections 31 and 32, under the pleadings, was the only fact in issue or in controversy. In this connection they urge that the special defense of estoppel was inconsistent with defendants' first negative defense; hence the court erred in denying plaintiffs' motion to strike out such plead-

ing from the answer, in failing to sustain plaintiffs' demurrer thereto and in failing to give judgment in their favor on the pleadings. Further, they urge that no estoppel is alleged by said pleadings nor did the cross-complaint state facts sufficient to constitute a cause of action nor was the issue of estoppel gone into at the trial, as they stood at all times upon the position taken by their demurrer and motion to strike, to wit: That as no such issue was made by the pleadings, all testimony and evidence bearing upon the matter. was erroneously admitted.

An examination of the record, however, shows no such error on the part of the court below. It appears that three defenses were properly and sufficiently set up by defendants: First, a traverse of the allegations of the complaint as to ownership of said tract, the location of said cave and of said section boundary line with respect thereto; second, a special defense of estoppel and, third, an affirmative defense by way of cross-complaint, based upon a breach of the alleged confidential relationship existing between the parties. Admittedly, the second and third defenses were inconsistent with said first negative defense, but it is thoroughly settled that defenses, consistent in themselves, but inconsistent one with another, may be set up in an answer and evidence may be admitted in support thereof. This right is not altered by the fact that the pleading was amended to conform to proof.

The only purpose of the action was to secure an adjudication of the rights of each of the parties with respect to the use, possession and operation of said Moaning Cave. Under the peculiar circumstances, it became necessary to determine and the parties were entitled to have litigated the question of the location of said section line and of the cave and the matter of equitable rights of defendants urged by their defense of estoppel and plea of breach of trust on the part of plaintiffs.

That said defense of estoppel is sufficiently pleaded can scarcely be denied, for the pleading sets forth in detail the entire transaction between the parties, as the facts and circumstances by reason of which plaintiffs are estopped to claim and assert the location of said cave within said section 32 and without said section 31. The averments are well within the rule that it is sufficient if the main facts

upon which the estoppel rests are set forth so that the opposite party may know its nature, and no citation of authority is necessary to support a rule so well settled.

The evidence shows plainly that both said Halbert, and plaintiffs as his successors, had full knowledge of the existence and occupation of said cave by defendants, of the improvements made therein by them and of the fact that expenditures were being made for its development, and further that said Halbert assured defendants that they would not be disturbed and that they thereupon proceeded with the enterprise in reliance upon his representations. An owner of property may not stand by and see another erect improvements thereon in the belief that he has title to or interest in it, and remain silent under circumstances calling upon him to speak, without thereby being estopped from claiming title to the property, at least without making compensation. (10 Cal. Jur., p. 643, sec. 23.)

Further, it is also our opinion that the cross-complaint states a cause of action in favor of defendants Malatesta and Eltringham as well as defendant Carley. This pleading likewise sets forth in detail the entire transaction, the relationship between the parties and plaintiffs' failure to disclose or impart to defendants the information obtained by them with respect to the location of said cave and their secret purchase of said additional acreage. Plaintiffs answered the cross-complaint and issues were properly joined thereon and evidence properly admitted, showing beyond doubt that plaintiffs took advantage of the knowledge secretly obtained by them of said defect in the common title to the cave and in fraud of the rights of defendants completed said Halbert purchase. It is immaterial that the precise location of the cave with respect to said two tracts was not established, as it is conclusively shown to be within them. It is obvious that plaintiffs, while jointly engaged with defendant Carley in operating said business, purchased the additional acreage for the sole purpose of forwarding the enterprise and making secure the ownership of the cave, and that they therefore took title to it subject to a trust in favor of their cotenants, copartners and vendors, the benefit of which might be claimed by each of them upon payment or tender of his proportionate share of the purchase money.

The existence of the confidential relationship which gave rise to the trust is shown by the agreement between the three explorers for joint ownership and operation of the cave; their sharing of expenditures and profits and the continuance of this joint arrangement after execution of the lease and option agreement to plaintiffs. In all proceedings connected with the conduct of the business or dissolution of the partnership, plaintiffs were required to act in the highest good faith, and could not obtain any advantage in the partnership affairs by misrepresentation or concealment of any character (Civ. Code, sec. 2411).

Other points are urged by appellants but they will not be specifically mentioned; they have all received earnest consideration and are, to our mind, without merit. We have no hesitancy whatsoever in affirming the judgment as first herein announced.

Curtis, J., Richards, J., Seawell, J., Shenk, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.