Marie CACIOPPO, Respondent,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant.

No. 28034.

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

James E. Taylor, J. Curtis Nettels, Kansas City, Jack C. Lorenze, William C. Sullivan, James A. Daugherty, St. Louis, for appellant.

Marie Cannon, Allan R. Browne, Ennis, Browne, Martin & Tapp, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special JJ.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from verdict and judgment for plaintiff in action for actual and punitive damages for continuing trespass to real estate. The dispositive question is whether the court erred in permitting recovery for damages which arose prior to five years immediately preceding institution of the action. Reversed and remanded.

Respondent has moved to dismiss this appeal for the reasons: (1) The notice of appeal is insufficient to confer jurisdiction because it states that defendant "appeals from the judgment entered * * * on the ninth day of May, 1975"; the judgment was entered April 3, 1975; defendant's motion for new trial was overruled May 9, 1975, but this was not an appealable order under Rule 81. (2) Appellant's statement of facts is partisan, inadequate, and unfair, in violation of Rule 84.04(c), and its points are general and do not state wherein or why the court erred in violation of Rule 84.04(d).

The motion to dismiss the appeal is overruled: (1) Although defendant should have expressed its appeal as taken from the judgment entered April 3, 1975, and not from the "judgment" entered May 9, 1975, the record demonstrates that defendant's reference to May 9, 1975, was inadvertent, and that it made a good faith effort to appeal from the judgment. Its notice of appeal is so treated. Rule 84.04, V.A.M.R.; *Dors v. Wulff*, 522 S.W.2d 325, 326[1] (Mo.App.1975); *Matter of Estate of Langford*, 529 S.W.2d 31, 32[2] (Mo.App.1975). (2) Appellant's brief demonstrates a good faith compliance with the rule governing contents of briefs, and it complies with the policy of the supreme court in that it is "reasonably possible" to decide the points raised on their merits. *Wykle v. Colombo*, 457 S.W.2d 695, 698[1] (Mo.1970).

On May 2, 1972, plaintiff filed her petition for damages alleging: that for approx-

imately 15 years defendant wrongfully and without just cause or excuse maintained a junction box for electrical (telephone) equipment in her apartment building; that the junction box required frequent inspection, servicing, and repair; that defendant's employees frequently and continuously entered the area of the box without permission and against her will, causing disturbance of (herself) her tenants and prospective tenants, and loss during said period of approximately $60 per month; that during the period 1954 to 1972, defendant, pursuant to the foregoing entries, continually littered the floor of the area of the box with wires, trimmings, scraps of materials, and other debris, "all as a matter of trespass and against the will of" plaintiff, creating a nuisance and necessitating repair and cleaning at her expense resulting in damage of $6,240; that by reason of defendant's wrongful, illegal, and willful placing of said junction box without authority from plaintiff and as a direct result of "the trespass and nuisance created as herein set forth," plaintiff's privacy was invaded, she suffered harassment, she was disturbed during an illness in 1961, her beauty salon business was damaged during 1964, 1965, and 1966, she lost tenants, she was unable to remodel her building, and it was rendered unsightly; that such acts resulted from legal malice, all to her actual and punitive damages in like sums of $50,000.

Defendant's answer, among other things, pleaded the bar of the 5-year statute of limitations, Section 516.120, RSMo 1969.

Appellant tacitly concedes that plaintiff made a case, and the evidence need be stated only to the extent necessary to an understanding of the case and resolution of the dispositive question.

In 1952, Marie Cacioppo purchased a 6-unit, 3-story apartment building at 1815 Brownell, Kansas City, Missouri. The building was one of a group of seven apartment buildings on Brownell and Woodland. She and her family occupied one apartment in her building, and she rented the remaining apartments to various tenants. One such apartment was made available for lease after her acquisition of the building by remodeling an area in the basement.

At the time of plaintiff's purchase, there was located in the basement of the building certain telephone equipment owned and maintained by Southwestern Bell Telephone Company. The equipment consisted of cables leading into, and a number of wires leading out of, a junction box or cross-box. The box and equipment had been installed by Kansas City Telephone Company in 1923 or 1924, and Bell acquired it in 1927.

Mrs. Cacioppo knew of the existence of the telephone equipment in the basement before she purchased the building, but did not know the extent of service it provided. She thought it was "all just part of the basement." A junction box serves as an access to line pairs leading to many telephones. The box in question served not only the telephones in plaintiff's building, but also the telephones of defendant's subscribers in the buildings clustered near 1815 Brownell. A junction box requires periodic service, and when trouble involves a telephone served by the box, it is necessary that repairmen have access to the box. The box in question, located as it was in plaintiff's private premises, necessitated arrangements between plaintiff and defendant's repairmen for purposes of entry into plaintiff's basement.

Shortly after, plaintiff learned that the junction box served buildings other than her own, and she began to complain of the presence of the box in her basement. She complained of it as an eyesore, and of consistent calls at her house by repairmen wanting access to her basement. She called the Bell office, and sought and gained an appointment with a Bell "district manager." When they met, she told the company's representative, "You are going to have to do something about this box," and she was assured by him that "they would send somebody out."

In June, 1952, plaintiff had a baby. During the baby's infancy, she was constantly bothered in her daily routine by arrange-

ments to meet telephone people to let them into her basement or to "leave the key with a neighbor or somebody to let the telephone people come in." During this period, the telephone people would come "two or three times a day, sometimes. I have had them as high as five times a day, with trouble for somebody in the box." She continually protested such interruptions by calling the telephone company and asking that the junction box be removed. She received repeated assurances that someone from the company would come to her place; but when only servicemen came they would laugh at her and tell her, "You're not going to get the telephone company to do anything."

In 1964 plaintiff returned to her work as a beautician, first at a shop in the Hilton Inn, later for a year at a shop on West 12th Street, and still later at a shop in one of her apartments. During the operation at the Hilton and on 12th Street, she often had to leave her customers at the shop and drive to 1815 Brownell to admit defendant's repairmen. On one occasion she was called by a telephone customer serviced through the junction box and was chided for not remaining at home to admit repairmen. On another occasion, a "district manager" of defendant called on plaintiff at her shop and, in the presence of customers, told her a man, seriously ill, whose telephone connected to the junction box, had reported telephone trouble and stated he might die and "it would be my fault if the man passed away because I was not home to let the telephone man in." He also told plaintiff that unless she arranged to have a basement key available to servicemen at all times the company would "get to me by taking both my personal phone out and my beauty shop phone, which would completely put me out of business, then."

As a result of the last incident, plaintiff called the Missouri Public Service Commission in Jefferson City, and talked to Mr. "Perkinger" (Gordon Persinger) of the commission's Department of Rates and Services. Mr. Persinger transferred her call to a 3-party call with an unidentified "representative" of the telephone company as a third party. Mrs. Cacioppo detailed her complaints with respect to the company and its junction box, after which Mr. Persinger told the representative, "I can't understand why you would want to bother this lady all of this time, when it isn't necessary. * * You should have had that [junction box] taken out a long time ago. * * * Do something about it. And if she can't afford a lawyer, I am going to get her mine."

After her call to Mr. Persinger, plaintiff consulted a lawyer and decided to deny further access to the junction box to telephone company personnel. She was advised by defendant, by letter of December 20, 1971, from Robert Pfeneger, that her denial of access to the junction box was jeopardizing telephone service to other customers and if access was not given by December 27, 1971, her own service would be terminated. On January 13, 1972, plaintiff's attorney sent a letter to defendant demanding removal of the box. The parties subsequently reached agreement with respect to access and correction of problems. In March, 1972, defendant completed work in plaintiff's basement so that the junction box no longer served any telephone outside plaintiff's building and it was no longer necessary for defendant's personnel to gain access to her basement for trouble calls other than her own.

Throughout the period 1952–1972, in addition to the foregoing complaints of nuisance and annoyance arising from the access problem, plaintiff continually complained of untidiness of defendant's workmen when working at the junction box. On such occasions, litter, debris, pieces of wire, and other junk would be left by defendant's workmen and plaintiff had to clean the area at her expense. Plaintiff also claimed a loss of rentals which, in absence of the junction box, would have been derived from her basement apartment. She placed the rentals at $45 per month for part of the period and at $60 per month for the remainder. She estimated the loss in rentals over

the 15 to 20-year period at $10,000. Plaintiff paid her son and neighborhood "kids" to do the cleaning work at the rate of one or two dollars a time, and her brief accepts defendant's statement in argument to the jury that this amounted to $2,000.

At the outset of trial, defendant moved unsuccessfully (in writing) to suppress all evidence or reference to "any damages allegedly sustained by plaintiff prior to May 2, 1967," and (orally) "to also suppress any evidence of any occurrences or any facts relating to incidents which occurred prior to May 2nd of 1967."

Plaintiff made no effort in offering her proof to separate evidence of events taking place prior to May 2, 1967, and those occurring after that date. There is no question of the timeliness and sufficiency of defendant's objections to plaintiff's evidence relating to events occurring prior to May 2, 1967, and defendant offered an instruction, refused by the court, which would have withdrawn from the case the evidence of any damage plaintiff may have sustained prior to May 2, 1967.

Appellant charges the court erred (I) in allowing plaintiff to recover damages which occurred prior to May 2, 1967, and in admitting evidence relating to the facts and occurrences taking place prior to May 2, 1967, on the ground the applicable statute of limitations, Section 516.120, supra, was a bar to the admission of any evidence relating to plaintiff's claim arising before the five years immediately preceding the filing of her petition. Appellant charges a related error (III) in refusing to give defendant's requested withdrawal instruction.

Respondent asserts (I) that under Section 516.100, RSMo 1969, limitations did not commence to run until the damage resulting from defendant's conduct was sustained and was capable of ascertainment as to the last item of damages; that the matters involving plaintiff and defendant were "continuing transactions" or a "running transaction" so that the statute did not commence to run until their termination; and that the combination of promises to

remedy the wrong and threats of reprisal if plaintiff pursued her remedies created an estoppel which prevents defendant from urging the statute of limitations. On the related charge (III) respondent supports the court's refusal to give the withdrawal instruction, asserting that its offer ignored the question of estoppel; that there was evidence of "continuous transactions" between the parties concerning the complaints of plaintiff as submitted in her verdict-directing instruction which revealed that the last item of damage occurred shortly before the petition was filed and within the 5-year period; that there was evidence to justify invoking the doctrine of estoppel in that defendant in a "continuing transaction" promised to correct matters complained of, and salted these promises with threats of removing plaintiff's personal and business telephones unless she desisted from her efforts to obtain redress.

Section 516.100, supra, provides:

"Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Section 516.120(3), supra, provides that "an action for trespass on real estate" shall be commenced within five years.

Plaintiff's petition states an action for damages for trespass on her real estate covering a period alleged as approximately fifteen years, enlarged by her evidence to twenty years, i. e., from 1952, when she acquired the real estate in question and asked that the junction box be removed, to March, 1972, when the box was removed.

The evidence shows that plaintiff made a case against defendant of trespass on her real estate over the period 1952 to 1972. Such evidence also shows that the trespass was of a continuing character in that numerous acts were committed, their continuance was likely, and there was injury or damage as a result of each act. Plaintiff refers to such series of acts as a "running transaction" or "continuing transactions." The appropriate description of such acts is "continuing trespasses." 75 Am.Jur.2d Trespass § 16.

As the foregoing authority suggests, where acts constitute a continuing trespass, and the injury from each act is, or would be, trifling, the owner may resort, in the first instance, to a court of equity for appropriate relief. The owner may proceed by way of injunction to restrain continuation of the trespass, or sue in ejectment, or maintain a common-law action on the theory of trespass for actual damages, and when the facts warrant it also recover punitive damages. *Keeven v. St. Charles County Utilities Co., Inc.,* 542 S.W.2d 349, 352–353[1] (Mo.App.1976).

Plaintiff chose to proceed on the theory of trespass for actual and punitive damages, and she was required by Section 516.120[4], supra, to bring her action (or actions) within five years of accrual, *Young v. Southwestern Bell Telephone Co.,* 318 Mo. 1214, 3 S.W.2d 381, 384[1] (1928); *Person v. City of Independence,* 114 S.W.2d 175 (Mo.App.1938). The statute of limitations began to run against plaintiff at such time as her suit could be maintained. *Baron v. Kurn,* 349 Mo. 1202, 164 S.W.2d 310, 316 (1942); *State ex rel. Sisters of St. Mary v. Campbell,* 511 S.W.2d 141, 148 (Mo.App. 1974).

"A continuing trespass upon real property creates separate causes of action, which are barred only by the running of the statute against the successive trespasses, and not by the running of the statute from the time of the original trespass. So, also, if a trespass is followed by injury constituting a continuing nuisance, the damages for the original trespass must all be recovered in one action, but successive actions may be brought to recover damages for the continuation of the wrongful conditions, and in these the damages are estimated only to the date of the bringing of each suit, and the statute of limitations does not begin to run from the date of the original trespass." 75 Am.Jur.2d Trespass § 65. "In the case of a continuing trespass the statute does not begin to run from the date of the original entry, but recovery may be had for a period of time not exceeding the statutory period immediately preceding the institution of the action." 87 C.J.S. Trespass § 71. Thus, "in case of a continuous trespass for a series of years, the action is barred as to so much only of the wrong as was committed prior to the term of limitation." *Graf v. City of St. Louis* (Memorandum Opinion), 8 Mo. App. 562 (1880). Accordingly, the court erred in permitting Mrs. Cacioppo to recover damages for any acts of trespass occurring prior to May 2, 1967, and the cause must be reversed for trial in which the issue of damages would be limited to damages sustained by plaintiff after May 2, 1967. See *Lindberg v. Linder,* 133 Cal.App. 213, 23 P.2d 842 (1933).

*Farrar v. St. Louis-San Francisco Ry. Co.,* 361 Mo. 408, 235 S.W.2d 391 (1950) and *Urie v. Thompson,* 357 Mo. 738, 210 S.W.2d 98 (banc 1948), cited by respondent, are silicosis cases and do not support her theory that she had to wait to seek relief from defendant's near 20-year pattern of misconduct until the source of her troubles, defendant's junction box, was removed in order to have her damages ascertained. If such were the case, it would seem that if defendant never removed the junction box, plaintiff's cause of action would never accrue. See also *De Paul Hospital v. Southwestern Bell Tel.,* 539 S.W.2d 542 (Mo.App.1976), where plaintiff could not institute suit for overcharge in a period 1953 to 1972 until after the Public Service Commission determined that plaintiff was entitled to a rate lower than that charged.

Nor was defendant estopped to assert the bar of the statute of limitations.

**926**

Statutes of limitations are favored in the law, and cannot be avoided unless the party seeking to do so brings himself within some exception. To constitute such an exception by way of an estoppel, proof asserted to support it must be absolute and unequivocal. *Neal v. Laclede Gas Co.*, 517 S.W.2d 716, 719[3], [6] (Mo.App.1974). There is no evidence that defendant agreed not to assert the statute of limitations in consideration of plaintiff's forebearance to sue upon which to found an estoppel against defendant, *Branner v. Klaber*, 330 Mo. 306, 49 S.W.2d 169, 178 (1932); or that defendant, by any act or in any way, prevented plaintiff from commencing her cause of action, *Rogers v. Brown*, 61 Mo. 187, 193 (1875); or that defendant induced plaintiff to refrain from instituting her suit before it was barred by the statute of limitations, *Martin v. Potashnick*, 358 Mo. 833, 217 S.W.2d 379, 382[7] (1949). The evidence shows only that she failed to sue until May 2, 1972.

 Appellant charges also that the court abused its discretion in permitting plaintiff to amend her petition and in denying defendant's retaliatory motion for continuance (II); that the court erroneously admitted evidence on damages that was speculative and without foundation (IV); that the court erroneously admitted the 3-party telephone conversation in evidence (V); that plaintiff's verdict-directing instruction (3) and her instructions on actual and punitive damages (5, 6, 7) were erroneous (VI, VII, VIII); and that the court erred in failing to order a remittitur of both actual and punitive damages (IX).

Charges II and IX are moot. The remaining charges suggest trial errors that may not again arise, or may be corrected in line with considerations suggested by the appellate briefs.

Judgment reversed and cause remanded.

All concur.