831 F.2d 1440
 Esther John ETALOOK, Plaintiff-Appellant,
v.
EXXON PIPELINE COMPANY; Sohio Pipeline Co.; Mobil Alaska
Pipeline Company; BP Pipelines, Inc.; Arco Pipeline Co.;
Phillips Petroleum Company; Phillips Alaska Pipeline
Company; Union Alaska Pipeline Company; Amerada Hess
Corporation; Amerada Hess Pipeline Corporation; Alyeska
Pipeline Service Company; State of Alaska, Defendants-Appellees.
 Nos. 86-4071, 86-4294.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1987.
Decided Nov. 5, 1987.
 
 Clem H. Stephenson, Tulsa, Okl., for plaintiff-appellant.
 Thomas E. Meacham, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of alaska.
 Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 A possessor of an Alaska Native Allotment tract appeals a judgment granting some but not all money damages claimed from an alleged trespass during the construction of the Trans-Alaska oil pipeline and its associated haul road. A portion of the pipeline and highway cross land granted to the late Arctic John Etalook, and now owned by his widow, Esther John Etalook.
 
 
 2
 The issues are whether Alyeska Pipeline Service Company (Alyeska) can condemn a right of way across the allotment and, if so, how much compensation Etalook should receive for the condemned property.
 
 
 3
 John Etalook first occupied the land in July 1946. On July 20, 1971, Etalook applied for a native allotment pursuant to the Alaska Native Allotment Act of 1906, Act of May 17, 1906, ch. 2469, Sec. 1, 34 Stat. 197 (formerly codified at 43 U.S.C. Sec. 270-1) (repealed 1971). The allotment was recorded on the Bureau of Land Management's (BLM) Master Title Plats on or before April 13, 1973. The patent to the allotment was issued on August 22, 1975.
 
 
 4
 Meanwhile, Alyeska--acting as an agent for the state of Alaska and pipeline owner companies Exxon Pipeline Company, et al. --attempted to secure rights of way across the lands occupied by Etalook for the Trans-Alaska oil pipeline. Alyeska first filed applications for the pipeline right of way with the BLM in 1969. The Trans-Alaska Pipeline Authorization Act, 43 U.S.C. Secs. 1651-1655 (1982), authorizing construction of the pipeline, was enacted in 1973. Alyeska's right-of-way application was granted on January 23, 1974. A haul road was built across Etalook's allotment in 1974, and the pipeline was built in 1975.
 
 
 5
 Alyeska first became aware of the conflict between the right of way and Etalook's allotment application late in 1974. On April 8, 1975, Alyeska, BIA representatives, and Etalook met to discuss the conflict. At a second meeting on May 27, 1975, Etalook accepted $25,000 in return for a road right of way covering 13.9 acres and a pipeline right of way covering 11.1 acres.[1] On the same day, BIA sent a letter to Alyeska's attorney, Harris Saxon, stating:
 
 
 6
 These [Etalook's] lands are segregated from public domain by applications filed pursuant to the Act of May 17, 1906, (34 Stat. 197), as amended August 2, 1956 (70 Stat. 954; 48 U.S.C. 357). When title to the lands passes to the individual native applicant, jurisdiction of the land will be under the Bureau of Indian Affairs. At that time, all easements for right of way and construction permits across individual restricted native lands must be processed and approved by Secretary of the Interior in accordance with Code of Federal Regulations Title 25-Part 161.
 
 
 7
 We have no objection at this time to the agreements you submitted. However, this non-objection does not imply approval now and is not to be construed as any intent for approval in the future.
 
 
 8
 After the first agreement was signed, Alyeska decided to construct a valve site on Etalook's property. In February 1977, Etalook accepted $3,500 in return for signing an additional grant of 0.25 acres for the pipeline right of way. The BIA approved the agreement. At some time after Alyeska began construction, Etalook withdrew his consent for the easements.
 
 
 9
 After a complex series of agency and court proceedings, the district court held that certain highway right-of-way agreements were invalid. The district court also held that Alyeska's condemnation was improper unless pursued by an official delegation of authority to condemn under an authorization from the Commissioner of the Alaska Department of Natural Resources. On February 8, 1984, Alyeska filed an amended complaint in condemnation, after receiving a delegation of authority from the Alaska Commissioner of Natural Resources.
 
 
 10
 Meanwhile, on September 29, 1983, Etalook had filed a new suit against the state of Alaska, Alyeska, and Exxon. Etalook sought: 1) ejectment; 2) quiet title to the improvements built on the allotment; 3) an order requiring Alyeska to account for and to pay to Etalook its profits resulting from transporting three billion barrels of oil over Etalook's allotment; and 4) an injunction barring continued trespass on the allotment. The district court consolidated this suit with the earlier, amended condemnation actions.
 
 
 11
 After obtaining an appraisal of the condemned property, the district court ordered Alyeska to file the required deposit of funds ($16,400) with the clerk of the court. The court then ordered disbursement of the deposited funds to Etalook. On January 14, 1985, the court condemned the easements across Etalook's allotment, and title vested in Alyeska.
 
 
 12
 The district court dismissed Etalook's claim of title to improvements built on the easement. It held that Alyeska properly obtained delegation of condemnation authority under Alaska law and that Alyeska thus owned the improvements. However, the court also determined that Etalook was entitled to fair payment for pre-condemnation occupancy and just compensation for the land condemned at its 1985 value. This award was to be offset by the $28,500 that Alyeska had already paid Etalook.
 
 
 13
 The district court also held that the profitability of improvements placed in trespass was an improper measure of damages because a state statute of limitations barred any forfeiture claim based upon a "bad faith" characterization of Alyeska's initial entry. It dismissed Etalook's claim for punitive damages. 625 F.Supp. 1315.
 
 
 14
 Etalook now appeals: 1) the court's condemnation decision; 2) the award to Alyeska of title to improvements; 3) the denial of punitive damages; and 4) the court's grant of summary judgment in favor of Alyeska on the damages and condemnation issues, thereby denying her a jury trial on those issues. Etalook also challenges the district court's rulings as violations of her civil rights.
 
 I. Condemnation
 
 15
 Etalook attacks the district court's judgment that the appellees owned the rights of way over her restricted trust allotment as an effective exercise of inverse condemnation prohibited by United States v. Clarke, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980). We reject this contention. Appellees obtained title through a formal condemnation action rather than through the informal proceedings required by definition for inverse condemnation. See id. at 257, 100 S.Ct. at 1130; First English Evangelical Lutheran Church v. County of Los Angeles, --- U.S. ----, 107 S.Ct. 2378, 2386-87, 96 L.Ed.2d 250 (1987).
 
 
 16
 The district court's rulings demonstrate that the appellees acquired their title to rights of way across Etalook's allotment by formal condemnation through a declaration of taking, as authorized by 25 U.S.C. Sec. 357. See 25 U.S.C. Sec. 357 (1982) (providing that "[l]ands allotted in severalty to Indians may be condemned for any public purpose ... in the same manner as land owned in fee may be condemned"). The district court awarded condemnation compensation based on the value of the allotment in 1985, when formal condemnation proceedings made final Exxon's title to the right of way. Had the court intended to award damages for inverse condemnation, it would have valued the allotment as of 1974, when the physical intrusion began. See Clarke, 445 U.S. at 256-57, 100 S.Ct. at 1129-30. Nor did the appellees ever claim that the initial entry gave them a public right of way across the allotment.
 
 
 17
 There thus is no merit to Etalook's claim that the district court's holding violated Clarke. Clarke, following the "plain meaning" of Sec. 357, held that a condemning authority must institute formal condemnation proceedings to gain title to Indian trust lands and may not gain title through inverse condemnation arising by way of physical invasion. See Clarke, 455 U.S. at 254-59, 100 S.Ct. at 1128-31. Because the district court held properly that appellees obtained title through formal condemnation proceedings rather than through their initial physical invasion, we must reject Etalook's argument that the prior physical invasion somehow converted the formal proceedings into an action for inverse condemnation.
 
 
 18
 We also reject Etalook's contention that the district court effectively issued inverse condemnation damages by awarding fair rental value up until the time of the formal condemnation rather than punitive damages for trespass and by allowing Alyeska to retain title to the improvements it built on the land. In a case like this, where the trespasser did not act in bad faith, but had paid for an easement, the proper measure of damages is the reasonable rental value of the property for the duration of the trespass. See infra at 1445-46, (affirming the district court's finding that Alyeska did not act in bad faith). Nor did the court err in awarding title of improvements to Alyeska. See infra at 1444-45. Thus, we reject Etalook's argument that the type of damages awarded indicate that appellees obtained the rights of way through inverse condemnation.
 
 
 19
 We find no merit in Etalook's argument that Alyeska had no power of eminent domain and thus had no right to condemn the rights of way. The Alaska Commissioner of Natural Resources, following the legislature's statutory mandate, has delegated to Alyeska the power to condemn real property required for pipeline rights of way. See Alaska Stat. Sec. 38.35.130 (1984).
 
 
 20
 We affirm the district court's holding that the appellees obtained title to the rights of way through the formal condemnation proceedings mandated by Sec. 357. We therefore reject Etalook's argument that the court effectively gave the appellees the right of inverse condemnation.
 
 II. Permanent Improvements
 
 21
 Etalook argues that Alyeska was a "common trespasser" when it built permanent improvements upon the rights of way and that she therefore now owns title to the segments of the pipeline and haul road that cross the property. As a result, she says, Alyeska must condemn the improvements that it built and compensate her for taking those improvements.
 
 
 22
 Etalook relies upon the common law rule that a trespasser who builds on another's land dedicates his structure to the land's owner. However, this rule is inapplicable here because Alyeska exercised the power of eminent domain, because an Alaska restitution statute prohibits such forfeiture where the trespasser acted in good faith, and because Etalook is estopped by her husband's failure to object to the improvements when they were made.
 
 
 23
 First, some courts have recognized an exception to the forfeiture rule where a body has the power to exercise eminent domain. "[T]he general rule as to things affixed to the freehold by a trespasser ... is not applicable as against a body having the power of eminent domain, and entering without leave, and making improvements for the public for which it was created and given such power." Anderson-Tully Co. v. United States, 189 F.2d 192, 197 (5th Cir.), cert. denied, 342 U.S. 826, 72 S.Ct. 47, 96 L.Ed. 624 (1951). See Searl v. School Dist., 133 U.S. 553, 564, 10 S.Ct. 374, 877, 33 L.Ed. 740 (1890).
 
 
 24
 Second, the common law forfeiture rule has been modified by Alaska's restitution statute. Alaska Stat. Sec. 09.45.640 (1983).[2] The statute requires that the defendant have held the property under color of title and in good faith. Although the record is unclear, it appears that Alyeska constructed most--if not all--of the haul road and the pipeline either before it discovered Etalook's allotment or after John Etalook agreed to sell the right of way. In any event the "color of title" requirement thus appears to be met here.
 
 
 25
 Furthermore, Alyeska had a good faith belief that it had title to the property. When Alyeska began construction, it did so in reliance upon the BLM's approval of its right of way applications and upon BLM tract maps that did not show Etalook's allotment. After Alyeska discovered the existence of Etalook's allotment, it entered into negotiations with him and paid him $25,000 for rights of way over his property. See Claxton v. Claxton, 214 Ga. 715, 107 S.E.2d 320, 323-24 (1959) (holding that the payment of consideration to the landowner raises a presumption of good faith). Even if Alyeska is deemed to have been negligent in failing to find Etalook's unrecorded allotment and in failing to heed the BIA's warning that its "no objection" letter did not imply approval of the 1975 transaction, such minor negligence would not negate the statutorily required good faith belief. See Powell v. Mayo, 123 Cal.App.3d 994, 998-1001, 177 Cal.Rptr. 66, 68-69 (1981) (holding that the degree of negligence is relevant to determining the existence of good faith).
 
 
 26
 Restitution is also required where, as here, the landowner stands by while the trespasser improves the property. See Goode v. Gaines, 145 U.S. 141, 154-55, 12 S.Ct. 839, 841-42, 36 L.Ed. 654 (1892); Burrow v. Carley, 210 Cal. 95, 290 P. 577, 581 (1930) (finding that the owner had a duty to notify the trespassing defendants when he knew of the improvements and had assured the defendants that he would not disturb them). See also Armstrong v. Maple Leaf Apartments, Ltd., 436 F.Supp. 1125, 1147-50 (D.Okla.1977) aff'd in part, 622 F.2d 466 (10th Cir.1979), cert. denied, 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 (1980) (rejecting the argument that laches is not available to defendants in actions brought by Indians with respect to their restricted lands in a case where the plaintiff sold her land, raised no objections when the defendant developed the land, and then brought an action for quiet title).
 
 
 27
 In summary, we reject Etalook's argument that she is entitled to damages reflecting the values of the improvements that Alyeska made in good faith reliance upon the right-of-way agreements executed by Etalook. Although Etalook later repudiated these agreements, with the support of the BIA, Etalook would be enriched unjustly if she were allowed to retain the benefits resulting when Alyeska improved the property in reliance upon an unenforceable contract. See Hardgrove v. Bowman, 10 Wash.2d 136, 116 P.2d 336, 337 (1941).
 
 III. Punitive Damages
 
 28
 Etalook contends that the district court erred in refusing to permit her to seek and prove punitive damages. Etalook argues that Alyeska was willful or reckless in its original entry upon her allotment and that trespassers such as Alyeska should have to pay their profits as punitive damages. Etalook seeks as punitive damages the millions of dollars that represent a pro rata share of the profits derived from the billions of barrels of oil that passed over the allotment. Etalook neglects to cite any authority to support this position,[3] nor did she oppose Alyeska's motion to dismiss her punitive damage claim.
 
 
 29
 To receive punitive damages, Etalook must show "outrageous" conduct--that is, at a minimum, a "reckless indifference to the rights of others, and conscious action in deliberate disregard of them." Alyeska Pipeline Serv. Co. v. Anderson, 629 P.2d 512, 527 (Alaska 1981), cert. denied, 454 U.S. 1099, 102 S.Ct. 674, 70 L.Ed.2d 641 (1981) (holding that the trial court did not err in dismissing a punitive damages claim, even though there was a willful trespass). The district court correctly found no facts in the record that supported a finding of "reckless indifference." See Schafer v. Schnabel, 494 P.2d 802, 805 (Alaska 1972) (holding that "the decision of the trier of fact not to grant ... punitive damages will be reversed on review only if a clear abuse of discretion is found").
 
 
 30
 The district court based its determination that Alyeska had not acted outrageously upon three findings of fact. First, Alyeska did not become aware of the Etalook allotment until late 1974, at which time it would have been impossible to change the pipeline location. Second, Alyeska acted under the belief that the right of way could always be obtained by condemnation. See Arco Pipeline v. 3.60 Acres, 539 P.2d 64, 69-73 (Alaska 1975) (demonstrating that Alyeska's belief in the feasibility of condemnation was reasonable). Third, Alyeska was acting in good faith because it reasonably believed it could enter into an agreement for an easement allowing use of the right of way. See Ostrem v. Alyeska Pipeline Serv. Co., 648 P.2d 986, 989 n. 8 (Alaska 1982).
 
 
 31
 In any event, any action for punitive damages based upon Alyeska's initial entry upon the Etalook allotment is barred by the six-year statute of limitations for trespass actions. Alaska Stat. Sec. 09.10.050(2) (1983). The district court held that the statute of limitations applied to Etalook. Because Etalook did not file a quiet title complaint until December 17, 1981, she may not receive trespass damages--or punitive damages linked to those trespass damages--for any activities occurring prior to December 17, 1975, including Alyeska's initial entry upon the land. See Cacioppo v. Southwestern Bell Tel. Co., 550 S.W.2d 919, 925 (Mo.App.1977) (holding that the statutes of limitations for trespass and for associated punitive damages run concurrently).
 
 IV. Jury Trial
 
 32
 Etalook challenges the district court's decision to grant summary judgment to the appellees, claiming that a jury trial is necessary to resolve remaining questions of fact concerning valuation and damages. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that a "genuine issue" exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").
 
 
 33
 The facts set forth in the district court's order are amply supported by the record and demonstrate that there existed no genuine factual dispute concerning the valuation of Etalook's property. Because Alyeska has already paid Etalook $44,900, a trial on the issue of valuation would serve a purpose only if the compensation and damages due Etalook exceed this amount. However, the only relevant appraisal submitted by either party showed compensation and trespass damages of $44,742.85, less than the amount that Alyeska has already paid.
 
 
 34
 The district court properly rejected two other items offered by the parties that might have supported an award exceeding the compensation already paid to Etalook by Alyeska. First, the court rejected as inadmissible an appraisal of $49,217.14 submitted by Alyeska because it was based upon the improper assumption of the prior existence of road access to the tract. Second, the court properly rejected evidence submitted by Etalook of a trespass litigation settlement regarding a coastal tract, finding it to be wholly irrelevant because the tract was not comparable to Etalook's and the transaction did not involve a willing buyer and a willing seller.
 
 
 35
 Because Etalook would bear the burden of proving damages at trial, she is required at the summary judgment stage to introduce evidence sufficient to establish the possibility that a reasonable jury could find that she is entitled to recovery in excess of the amount already paid by Alyeska. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Etalook failed to fulfill this burden; she neither opposed Alyeska's valuation evidence by offering any admissible evidence of liability and compensation values for comparable property, nor did she claim that such evidence existed.[4]
 
 
 36
 We also reject Etalook's argument that summary judgment infringed her right to a jury trial. The very existence of a summary judgment provision demonstrates that no right to a jury trial exists unless there is a genuine issue of material fact suitable for a jury to resolve. Alaska Stat. 09.55.320 (1983), concerning the right of an interested party to obtain jury review of a master's award of damages and valuation of property, does not make summary judgment inappropriate where it would have been appropriate if a jury had initially heard the matter.
 
 
 37
 Nor do we find any merit in Etalook's novel argument--raised for the first time upon appeal--that summary judgment constitutes "equitable relief" and may not be granted in an action "at law." If Etalook's argument were to be accepted, summary judgment would never be appropriate in cases that are tried to a jury, given that the seventh amendment preserves the right to jury trial only for "suits at common law." U.S. Const. amend. VII. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (recognizing that the right to jury trial exists for legal issues but not for equitable issues). Etalook's contention is unsupported and unsupportable.
 
 
 38
 Finally, the record does not support Etalook's argument that Alyeska should not be granted summary judgment because it has "unclean hands." In dismissing Etalook's claim for punitive damages, the district court found no evidence of "outrageous" conduct or "reckless indifference." See supra at 1444-45. Alyeska is not barred from receiving equitable relief.
 
 
 39
 Thus, Alyeska is entitled to summary judgment on the issues of valuation and damages because there exist no genuine issues as to material fact that would require a jury trial. Etalook's contentions that summary judgment should have been denied because of the doctrine of "unclean hands" and because of an imaginary distinction between law and equity are unsupported by authority and border on being frivolous. See Fed.R.Civ.P. 11 (requiring that motions be "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law").
 
 V. Alleged Civil Rights Violation
 
 40
 Etalook raises, also for the first time on appeal, allegations that the district court has deliberately engaged in a pattern of denying Native Americans their civil rights. Etalook's brief focuses on Etalook and Bertha Tabbytite, the Indian beneficiary in Clarke. Etalook fails to support her statements concerning Tabbytite with evidence in the appeal record or with any admissible affidavit testimony.
 
 
 41
 Similarly unsupported is Etalook's allegation that the district court has engaged in a pattern of delaying payment of condemnation proceeds to her. Alyeska made its deposit of estimated condemnation on October 16, 1984. On January 8, 1985, the district court, acting upon Etalook's motion, ordered the release of the entire estimated compensation to her. That order was modified, at the request of Etalook's counsel, to permit issuance of a check jointly to Etalook and her counsel. And, as we rule today, there is no merit to Etalook's claim that the trial court improperly applied Clarke to the facts of this case. See supra at 1444-45.
 
 VI. Conclusion
 
 42
 The district court properly concluded that Alyeska could condemn rights of way across Etalook's allotment and awarded the correct measure of damages. The grant of summary judgment was proper. Etalook's civil rights have not been infringed. The decision of the district court is affirmed, and the appellees are entitled to costs.
 
 
 43
 Affirmed.
 
 
 
 [1]
 The district court held in its August 25, 1983 Order that Etalook did not have an alienable interest at the time of this agreement
 
 
 [2]
 Section 09.45.640 reads:
 When property is recovered from a defendant who, in good faith, holds the property under color of title adversely to the claim of the plaintiff, the value of any permanent improvements which the defendant ... made to the property shall be allowed as a setoff against damages allowed for the withholding of the property.
 
 
 [3]
 Rule 28(a)(4) of the Federal Rules of Appellate Procedure requires that the brief of the appellant "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." See United States v. Loya, 807 F.2d 1483, 1487 (9th Cir.1987) (noting that "[i]ssues raised in a brief which are not supported by argument are deemed abandoned")
 
 
 [4]
 At page 17 of Etalook's appeal brief, Etalook has first raised the claim that the "highest and best use" of the allotment land was for pipeline and highway purposes, based upon Alyeska's use of the land for these purposes, under permissions granted them by Etalook. This argument was not raised in the district court and must be disregarded. In any event, the argument improperly attributes to the tract an increase in value caused by the very improvements for which condemnation was sought. [See Order of May 3, 1982 (Alyeska R-1. 22); Order of June 17, 1986 (R. 189 at p. 4);] United States v. 320.0 Acres of Land, 605 F.2d 762, 811-20 (5th Cir.1979)