[Civ. No. 17207.  First Dist., Div. Two.  Jan. 15, 1958.]

GENE L. SCHRIBER et al., Plaintiffs and Appellants, v. ALAMEDA COUNTY-EAST BAY TITLE INSURANCE COMPANY et al., Respondents; FRANCHISE TAX BOARD etc., et al., Defendants and Appellants; ETHEL McKAY, Lien Claimant and Appellant.

Philip S. Ehrlich, Irving S. Rovens, and Albert A. Axelrod for Plaintiffs and Appellants.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, and Eugene B. Jacobs, Deputy Attorney General, for Defendants and Appellants.

George H. Sullivan for Lien Claimant and Appellant.

Lloyd H. Burke, United States Attorney, Lynn J. Gillard and Charles Elmer Collett, Assistant United States Attorneys, Leon Yudkin and Edward H. Boyle for Respondents.

DOOLING, J.—There are three appeals involved herein. Plaintiffs Gene L. and Beatrice Ellen Schriber appeal from those portions of the judgment which hold that the liens of defendants United States and State of California are prior and superior to their lien and which order the sale of the property involved and the distribution of the proceeds: first, to the United States; second, to the State of California; and third, to the Schribers and their judgment creditors. Ethel McKay, judgment creditor of plaintiffs, appeals from the same portions of the judgment. Hereafter these three will be referred to as appellants.

Respondent and cross-appellant, State of California, hereinafter called the State, appeals from that portion of the judgment holding that the lien of the United States should be paid prior to that of the State.

There is no conflict as to the basic facts of this case.

Prior to April 30, 1945, Schriber was the sole owner of the Menlo Club and of Tiny's Bar in San Francisco. On April 30, 1945, Schriber sold the assets of the club and the bar and he also executed a 10-year lease to the building containing them. The consideration for the sale and the lease was $175,000. Both the sale and the lease were consummated in the name of one Billington as purchaser and lessee. One Elmer Remmer, the actual purchaser, paid $25,000 down, and

three notes were executed with Billington as the maker and Remmer as the guarantor. Each note was in the amount of $50,000; the first payable August 1, 1945; the second, August 1, 1946; and the third, August 1, 1947.

As security for these notes, Remmer put up certain real property in Contra Costa County. The property was conveyed to the defendant title company by one Haughey who was Remmer's attorney and who held legal title to the property for Remmer. A letter to the title company from Haughey authorized the company to take title in its name with the understanding that, although there was no designation of trust, the company was not to convey the property to anyone except at Haughey's direction. A letter, dated May 1, 1945, from Haughey to Brown, Schriber's attorney, stated that certain documents were to be held by Brown as security for the performance of the sale and lease agreement. These documents were letters authorizing the title company to convey the Contra Costa property to Brown.

On March 10, 1949, respondent United States recorded Notices of Tax Liens Number 518 against Remmer for $508,-505.14 and Number 519 against his wife for $358,868.38. On June 4, 1949, the Franchise Tax Board acting for the State recorded its certificate of tax liability against the Remmers. A renewal certificate was filed June 2, 1954.

The principal of the 1945 and 1946 notes was paid, but some interest remained unpaid. On July 1, 1949, $25,000 was paid on the 1947 note and $25,000 principal plus interest remained to be paid. Schriber made a demand on the title company to convey the property to him on April 30, 1952.

This action was commenced November 2, 1953. The complaint named as defendants the title company, Billington, Remmer and his wife, Haughey and his wife, Brown, the United States, the Franchise Tax Board, and the State of California. The action was entitled ''Complaint for Declaratory Relief'' and asked for a declaration of all the parties' rights, title, interests and obligations concerning the Contra Costa property. A money judgment was prayed for against Remmer and it was further prayed that this sum be declared a first lien on the property and that the court order a sale to satisfy the judgment.

The State answered that its lien was superior and alleged that any action based on the three promissory notes was unenforceable under provisions of Code of Civil Procedure, section 337, subdivision 1, the statute of limitations.

The United States answered the complaint denying that the amounts claimed by Schriber constituted a first lien on the Contra Costa property. After the conclusion of the trial, the United States was granted leave to file an amendment to its answer, which amendment pleaded that the claim of Schriber was barred by the statute of limitations. (Code Civ. Proc., § 337, subd. 1.)

The Remmers, Billington, Brown, Haughey and the title company are not parties to this appeal.

Basically appellants claim that the trial court committed error (1) in holding that the liens of the United States and the State were prior to the lien of appellants, (2) in holding that the State had any lien whatsover against the property, (3) in directing that the proceeds from the sale of any foreclosure be paid to the United States and/or the State when neither of the respondents brought proceedings for the foreclosure of their respective liens and (4) in permitting the United States to file an amended answer to set up the defense of the statute of limitations after the conclusion of the trial.

█ 1. The priority of the liens of the State and the United States depends upon the running of the statute of limitations in their favor against appellants' lien. (Code Civ. Proc., § 337, subd. 1; Civ. Code, § 2911.) Three factors are relied upon by appellants to toll the statute of limitations. (1) That Remmer made a payment on the principal of the last note on July 1, 1949. Under Code of Civil Procedure, section 360, this payment started the running of the statute afresh, at least as to that note, and the four-year period did not expire until July 1, 1953. (*Eilke* v. *Rice,* 45 Cal.2d 66 [286 P.2d 349].) The trial court erroneously found that this payment did not toll the statute. However, since this action was not commenced until November 2, 1953, this payment alone was not sufficient to render the defense of the statute ineffective.

█ Appellants further rely (2) on Remmer's absence from the State attending a trial in Nevada in 1951 and 1952 and (3) on Remmer's request of forbearance for a period of 30 days after the conclusion of that trial. The trial court found that Remmer was absent from the State for six months ending in February 1952 and this absence, with the agreement to forbear, tolled the running of the statute until March 1, 1952. Appellants claim that by tacking this to the payment in 1949 the expiration of the statute of limitations did not occur until after the filing of their action.

The State and the United States rely on those cases which hold that neither express waiver nor voluntary absence of the debtor from the State can toll the statute against a junior lienholder whose lien attached prior thereto. (*Flack* v. *Boland,* 11 Cal.2d 103, 104, 107 [77 P.2d 1090]; *Foster* v. *Butler,* 164 Cal. 623 [130 P. 6].) The appellants, while admitting the general rule, argue that the rule does not extend to "a mere creditor, who has acquired no contract lien, and parted with no value." (*Ward* v. *Waterman,* 85 Cal. 488, 507 [24 P. 930].) The Waterman case holds this squarely but it has never since been cited or followed in California on this point.

On the contrary in *Brandenstein* v. *Johnson,* 140 Cal. 29 [73 P. 744], where the precise point was again presented the court said at page 32: "It is true that in *Wood* v. *Goodfellow* [43 Cal. 185] the subsequent lienholder was a mortgagee, but no distinction is made in that case, or in other cases above cited, between a mortgage lien and any other valid lien; and in *Watt* v. *Wright,* 66 Cal. 202 [5 P. 91], it was expressly held that the absence of a mortgagor from the state did not stop the running of the statute of limitations as against the subsequent lienholder by attachment. [Citing cases.] The theory of all the cases above cited is, that while the general rule is, that the plea of the statute of limitations is a personal privilege, that rule does not extend to subsequent property rights over which he has no control." This case, in contradistinction to the Waterman case, has been since frequently cited, the latest instance being in *Flack* v. *Boland, supra,* 11 Cal.2d at page 106. We must accept the later ruling of the Supreme Court as binding on us and accordingly hold that the running of the statute of limitations in favor of the State and the United States was not affected by the absence of Remmer from the State nor by the forbearance to sue him at his request.

Appellants also rely on a provision of the notes, signed by Remmer as guarantor: "I waive any and all rights by reason of any extension of time or forbearance of any kind." In view of the fact that Remmer was a guarantor this provision, properly construed, is not a waiver of the statute of limitations, but rather a waiver of the guarantor's right to claim a discharge by reason of an extension of time or other forbearance to Billington, the principal maker. (*Braun* v. *Crew,* 183 Cal. 728 [192 P. 531].) In any event there is no

evidence that the State or United States had any notice of this provision when they recorded their lien notices. The notes were not recorded and hence the rule of *Dexter* v. *Pierson,* 214 Cal. 247 [4 P.2d 932], is not applicable. That case made a provision in a recorded instrument waiving the statute of limitations binding on subsequent purchasers since, because it was of record, they took with notice of it. Appellants claim that the United States had notice of this provision because the notes were subpoenaed by the United States in the Nevada trial but that action was not commenced until 1951 and the liens were recorded in 1949.

Here the tax liens attached to the property of Remmer, which was owned by Remmer subject only to a lien as security for his debt to Schriber. If the statute of limitations against Schriber's lien (Civ. Code, § 2911) ran in favor of the holders of these tax liens Schriber's lien could not be asserted against their defense of the statute. (*Flack* v. *Boland, supra,* 11 Cal. 2d, p. 106.) The situation is not comparable to any of the cases cited from California or the federal courts where the lienor attempted to recover through a chose in action which was barred as to the lienee.

Nor is there any force in appellants' claim that the statute did not commence to run until their demand on the title company to convey. The basis of their demand was their lien to secure payment of the notes. When the notes were barred by limitation as to the State and the United States the lien was extinguished as to them. (Civ. Code, § 2911; *Flack* v. *Boland, supra,* 11 Cal.2d, p. 106.)

Appellants can take no comfort from the fact that the State renewed its lien in 1954. Such renewal "extends" the existing lien for another five-year period. (Rev. & Tax. Code, § 18883.) It does not create a new lien as appellants seem to argue. The lien of the United States extends for six years and had not expired when the United States filed its answer asserting its lien and praying that if the property was sold it should be paid from the proceeds. This was such a "proceeding in court" as to keep the lien alive. (26 U.S.C., § 6502.)

■ 2. As against the State appellants assert that it acquired no lien under Revenue and Taxation Code, section 18882. That section provides that the lien is upon "all property of the taxpayer in the county" and in its second sentence provides: "The lien has the force, effect, and priority of a judgment lien . . ."

Appellants argue that a judgment lien only reaches legally

vested, and not equitable, interests in real property. (29 Cal. Jur.2d, Judgments, § 284, pp. 262-263.) They then argue that since the property was deeded to the title company as trustee Remmer only had an equitable interest therein. The State counters that the transaction was a mortgage under which the title company had only a naked legal power to convey. ■ A deed absolute on its face when given to secure a debt is a mortgage and this is true even where the conveyance is to a third person to hold for the mortgagee. (*Anglo-California Bank* v. *Cerf*, 147 Cal. 384, 388-389 [81 P. 1077]; *Banta* v. *Wise*, 135 Cal. 277 [67 P. 129].) ■ The interest of one who holds the bare legal title is not subject to a judgment lien. (*Riverdale Mining Co.* v. *Wicks*, 14 Cal.App. 526 [112 P. 896]; 29 Cal.Jur.2d, Judgments, § 284, p. 263.) It was held in *People* v. *Irwin*, 14 Cal. 428, that the judgment lien does attach to the interest of the grantor where the deed though absolute in form is in fact a mortgage. This must be so since the mortgagor retains all of the legal title subject only to the mortgage lien. (Civ. Code, §§ 2920, 2924, 2925; Code Civ. Proc., § 744.)

■ The trust under which the title company held was a mere naked one to convey and the direction to convey was held by Brown only as security for the debt of Remmer. This was merely a circuitous means of securing the debt by conveyance to a third person. The title company had no power of sale and so the transaction had none of the features of a conventional security deed of trust. It must under the authorities and the code sections cited be regarded as a mortgage.

This conclusion makes it unnecessary to decide the question posed by the State that Revenue and Taxation Code, section 18882, by its first sentence makes the lien attach to "all property of the taxpayer in the county" and hence is broader than the ordinary judgment lien. We accordingly leave this question undecided.

■ 3. While denominated "Complaint for Declaratory Relief," the original complaint prayed for a judgment and sale of the property to satisfy such judgment. The State and the United States after pleading the facts upon which their claims of lien were based prayed that their respective liens be adjudged prior and paramount and if the property be ordered sold the proceeds be ordered paid first in satisfaction of their respective liens. We are satisfied that by their pleadings the

State and the United States properly sought the foreclosure of their respective liens in this proceeding.

4. Both the appellants and the State urge that it was an abuse of discretion to permit the United States to amend its answer after trial to plead the statute of limitations. The plea of the statute of limitations has been held to constitute more than a purely technical defense. ''Statutes of limitation are . . . 'vital to the welfare of society and are favored by the law . . . to be viewed as statutes of repose, and as such constitute meritorious defenses.' '' (*Scheas* v. *Robertson,* 38 Cal.2d 119, 125-126 [238 P.2d 982].) The issue of the running of the statute was thoroughly gone into on the trial and appellants for that reason cannot claim the prejudice of the injection of a new issue which they were not given full opportunity to meet. They claim that the notice of motion to be allowed to amend was defective in not stating the grounds. But the supporting affidavit stated that the motion was made to prevent ''circuity of priority'' and ''to preserve the rights of the parties.'' The trial court properly concluded that this was equivalent to ''the interests of justice.'' (Code Civ. Proc., § 473.) The code is sufficiently complied with if the affidavits disclose the ground relied on to support the motion. (*Savage* v. *Smith,* 170 Cal. 472, 474 [150 P. 353] ; *Shields* v. *Shields,* 55 Cal.App.2d 579, 583-584 [130 P.2d 982] ; 34 Cal. Jur.2d, Motions, Rules etc., § 10, pp. 512-513.)

The State's objection seems to be that the United States is getting a ''free ride'' on the defense developed and established by the State. Lawsuits are not mere contests of skill between the litigants but serious attempts to establish the respective rights of the parties. The State by the allowance of the amendment is losing a windfall that the neglect of the United States to earlier plead the statute seemed to have given it, but amendments of pleadings lie in the sound discretion of the trial court and unless prejudice in the development of its own evidence, which is not claimed, resulted to the State from the failure of the United States to plead the statute earlier, the State has no substantial ground for complaint. If the trial court had denied the United States leave to amend it may well be that its discretion would not have been abused. (*L. B. Laboratories, Inc.* v. *Mitchell,* 39 Cal.2d 56 [244 P.2d 385] ; *Rudd* v. *Byrnes,* 156 Cal. 636 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A.N.S. 134].) But the trial court has a latitude in the exercise of its discretion and whether the motion is granted or denied an appellate court will only

reverse where a clear abuse of that discretion appears. ██ "It is, however, thoroughly settled that the granting or refusing of leave to amend an answer, where leave is required, is a matter committed to the sound discretion of the trial court. This is true of amendments for the purpose of setting up the statute of limitations, as well as other amendments." (*Wrightson* v. *Dougherty*, 5 Cal.2d 257, 266 [54 P.2d 13].)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.

The petition of plaintiffs and appellants and lien claimant and appellant for a hearing by the Supreme Court was denied March 12, 1958.