[No. B083226. Second Dist., Div. Six. Mar. 14, 1995.]

KAICHEN'S METAL MART, INC., Plaintiff and Appellant, v.
FERRO CAST COMPANY, Defendant and Respondent;
ROHR INDUSTRIES, INC., Third Party Claimant and Respondent.

**COUNSEL**

Brown, Altshuler & Spiro and Bruce J. Altshuler for Plaintiff and Appellant.

E. E. Clabaugh, Jr., for Defendant and Respondent.

Page, Polin, Busch & Boatwright, Michael E. Busch, Rod S. Fiori, Christina B. Gamache and Dorothy A. Johnson for Third Party Claimant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Appellant Kaichen's Metal Mart, Inc., challenges the trial court's order denying its motion to declare respondent Rohr Industries, Inc.'s senior secured lien invalid. We affirm.

This case presents a question of competing liens held by appellant (Kaichen's) and respondent (Rohr), creditors of respondent Ferro Cast Company (Ferro).

Rohr's senior lien is based on a $600,000 loan it made to Ferro in June 1986. In consideration for the loan, Ferro executed a promissory note in favor of Rohr stating that the amount loaned was due and payable on July 1, 1988. In order to secure Ferro's obligation under the note, the parties executed an agreement granting Rohr a security interest in Ferro's personal property, including a bank account. A financing statement pursuant to the California Uniform Commercial Code (hereinafter Commercial Code) was filed with the Secretary of State in June 1986. (Com. Code, § 9401 et seq.) Except for some interest payments made in 1987 and January 1988, Ferro made no payments on the principal and defaulted on the promissory note effective July 1, 1988.

Meanwhile, Kaichen's lien was obtained pursuant to a judgment against Ferro in March 1987 for $102,039 plus interest, allegedly for unpaid goods. In March 1988, Kaichen's was prevented from levying on Ferro's bank account due to Rohr's superior lien.

Rohr filed a continuation statement in May 1991 pursuant to the Commercial Code to continue its security interest with Ferro. (Com. Code, § 9403.5.)

Kaichen's became a junior secured lienholder when it filed a notice of judgment lien with the California Secretary of State in December 1991. (Code Civ. Proc., § 697.510 et seq.)

In April 1992, Ferro executed an agreement with Rohr, wherein Ferro acknowledged its debt to Rohr, and agreed to pay the debt and waive the

statute of limitations. Rohr in turn agreed it would forebear from instituting legal action against Ferro. Rohr states that Ferro's assets in April 1992 were of minimal value in comparison to the debt it owed Rohr, and, because Ferro was still in business, Rohr anticipated the value of Ferro's assets would increase in the future.

Subsequent to this last agreement between Rohr and Ferro and Kaichen's' second unsuccessful attempt to levy on Ferro's bank account, Kaichen's filed its motion to declare Rohr's secured lien invalid. Citing Code of Civil Procedure section 337, Kaichen's argued that the limitations period for Rohr's filing suit against Ferro expired on July 1, 1992, four years after the July 1, 1988 due date of Ferro's promissory note to Rohr. The trial court denied Kaichen's' motion on the primary ground that respondents had extended Ferro's debt and lien prior to the running of the statute of limitations, relying on *Eilke* v. *Rice* (1955) 45 Cal.2d 66 [286 P.2d 349].

The primary issue on appeal is whether Ferro's agreement to extend the statute of limitations is binding on Kaichen's. We conduct an independent review of this question of law. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

Kaichen's contends it had standing to assert Ferro's defense of the statute of limitations. ■ It is established that, while the plea of the statute of limitations is a personal privilege, the rule does not extend to third persons who have subsequently acquired interests in secured property. Such persons may invoke the aid of the statute even though the senior creditor and the debtor have agreed between themselves to waive the statute. (*Brandenstein* v. *Johnson* (1903) 140 Cal. 29 [73 P. 744] [judgment creditor]; *Schriber* v. *Alameda etc. Title Ins. Co.* (1958) 156 Cal.App.2d 700 [320 P.2d 82] [lien creditor]; *Flack* v. *Boland* (1938) 11 Cal.2d 103 [77 P.2d 1090] [mortgagee]; *Mitchell* v. *Auto. etc. Underwriters* (1941) 19 Cal.2d 1, 6 [118 P.2d 815, 137 A.L.R. 923] [trust deed holder].)

Here, however, Kaichen's' technical right to standing has no effect on Rohr's security interest. This is because, as the trial court determined, this case does not deal with a debt barred by the statute of limitations.

The parties dispute whether the four-year statute of limitations contained in Code of Civil Procedure section 337 concerning written contracts even applies to personal property security interests under the Commercial Code. Rohr argues that Code of Civil Procedure limitations statutes do not apply to security interests pursuant to the Commercial Code. We disagree.

Commercial Code section 1103 provides: "Unless displaced by the particular provisions of this code, the principles of law and equity, including . . .

*[any] validating or invalidating cause* shall supplement its provisions." (Italics added.) ■ It has been held, pursuant to section 1103, that other code provisions pertaining to limitations of actions are applicable, "[a]s there is no special statute of limitations set forth in the Commercial Code . . . ." (*Bank of America* v. *Security Pacific Nat. Bank* (1972) 23 Cal.App.3d 638, 642, fn. 3 [100 Cal.Rptr. 438].)

Civil Code section 2911 is the relevant statutory authority, providing that "[a] lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, . . . [¶] 1. An action can be brought upon the principal obligation . . . ." In California, the underlying note is the "principal obligation" and the lien is incident thereto. (*Flack* v. *Boland, supra,* 11 Cal.2d at p. 106.) The running of the statute of limitations bars an action to enforce the debt, and also deprives the creditor of filing an action for judicial foreclosure.[1] (*Ibid.*; *O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587, 601 [5 Cal.Rptr.2d 712].)

Rohr seeks to distinguish *Flack* v. *Boland, supra,* on the ground that the case involved a security interest in real property and therefore is inapplicable to commercial personal property security interests. Not so. *Boland* holds that Civil Code section 2911 applies to "any" lien. (11 Cal.2d at p. 106.) In *I. S. Chapman & Co.* v. *Ulery* (1936) 15 Cal.App.2d 452, 457 [59 P.2d 602], the appellate court ruled that all rights of the mortgagee were barred by the statute of limitations "so far as they rest upon the promissory notes and the *chattel* mortgages securing them." (Italics added.) These cases are still good law.

Rohr bases its assertion, that pre-Commercial Code case authority is no longer relevant, on its view that the purpose of the code is to expand creditors' remedies. Rohr's argument is not persuasive; it is purely conclusionary and without adequate legal discussion.

Rohr does cite Civil Code section 2914 in support of its position that Code of Civil Procedure limitations statutes do not apply to security interests under the Commercial Code. That section states: "None of the provisions of this chapter [title 14, "Liens"] apply to any transaction or security interest governed by the Uniform Commercial Code." However, in the absence of any Commercial Code provisions on statutes of limitations, section 2914 does not preclude application of Code of Civil Procedure section 337. The

---

[1]This rule does not bar the power of sale under a deed of trust. (*Carson Redevelopment Agency* v. *Adam* (1982) 136 Cal.App.3d 608, 610 [186 Cal.Rptr. 615]; *Napue* v. *Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 616 [220 Cal.Rptr. 799].)

only Commercial Code sections cited by Rohr do not mention the applicability of limitations statutes to secured liens. (Com. Code, §§ 9302, 9303, 9401, 9403.)

Rohr cites a Colorado case, *Cooper* v. *First Interstate Bank* (Colo.Ct.App. 1988) 756 P.2d 1017, for its proposition that statutes of limitations cannot defeat personal property security transactions. *Cooper* held that the running of the statute of limitations on a promissory note could cause the remedy on the note to be lost, but did not extinguish the remedy on the secured debt, since a secured creditor may collect the collateral as discharge of the debt at any "commercially reasonable time." (P. 1021.) We decline to follow *Cooper*. It is directly contrary to California law, providing that the statute of limitations runs on both the personal obligation and an action to enforce the creditor's rights against the secured debt. (*Miller* v. *Provost* (1994) 26 Cal.App.4th 1703, 1707 [33 Cal.Rptr.2d 288], citing *Flack* v. *Boland, supra*, 11 Cal.2d at pp. 106-107.) This law has been in effect in this state over 134 years. (*Lord* v. *Morris* (1861) 18 Cal. 482, 490 .)

Since the statute of limitations is applicable, does it, as Kaichen's contends, bar the extension agreement between Rohr and Ferro? Kaichen's states it has no quarrel with the general right of a debtor and a creditor to agree to extend the statute of limitations. However, it broadly argues this right is not applicable against the rights of a junior lienholder.

*Eilke* v. *Rice, supra*, 45 Cal.2d 66, dealt with the construction of former Code of Civil Procedure section 360. The current amended section 360, like section 337, is contained within title 2 governing the time of commencing civil actions. Section 360 provides that a written acknowledgment or promise indicating a new or continuing contract, or any payment made on a promissory note indicating acknowledgment of a continuing contract, is sufficient evidence to take a case out of the statute of limitations.[2] Its companion statute, section 360.5, alternatively provides that a written waiver

---

[2]It reads: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby, provided that any payment on account of principal or interest due on a promissory note made by the party to be charged shall be deemed a sufficient acknowledgment or promise of a continuing contract to stop, from time to time as any such payment is made, the running of the time within which an action may be commenced upon the principal sum or upon any installment of principal or interest due on such note, and to start the running of a new period of time, but no such payment of itself shall revive a cause of action once barred." (Code Civ. Proc., § 360.)

of the statute of limitations by the debtor will bar the defense of the statute of limitations, and that such waivers may be made successively.[3]

█ By its express language, Code of Civil Procedure section 360 is restricted to "continuing" contracts, that is, contracts against which the statute of limitations has *not* run at the time of the acknowledgment. (*Eilke* v. *Rice, supra,* 45 Cal.2d at p. 73.) The acknowledgment of a debt before the statute has run does not create a new obligation but merely continues the old obligation through a new statutory period. (*Ibid.*) On the other hand, the acknowledgment of a debt already barred by the statute creates a new contract and a new obligation dating from the acknowledgment. (*Ibid.*)

Kaichen's ignores the crucial factor of the timing of an acknowledgment of debt or a waiver of the limitations statute. Its argument, that *Eilke* did not involve a third party secured creditor, and that therefore acknowledgments and waivers are void in cases where there is a junior lienholder, is not persuasive. Read with Code of Civil Procedure sections 360 and 360.5, *Eilke* holds that a debtor and creditor may without restriction, *if done before the statute of limitations has run,* agree to extend the statute of limitations.

█ Rohr and Ferro executed a sufficient written acknowledgment of debt, as well as a sufficient written waiver of the statute of limitations. As the trial court correctly found, these agreements were made in April 1992, *before* the expiration of the four-year limitations period on July 1, 1992.

Kaichen's cites *Schriber* v. *Alameda etc. Title Ins. Co., supra,* 156 Cal.App.2d 700, as prohibiting agreements to extend the limitations statute as against third party creditors. The case did not so hold. It merely held that a junior lienholder may assert the debtor's personal defense of the statute of limitations. (P. 705.) However, in *Schriber,* contrary to our case, the statute of limitations had already run. (*Ibid.*) Here, since the limitations period had not run prior to respondents' agreeing to extend the statute, no new obligation or contract was created by the extension agreement. (*Eilke* v. *Rice, supra,* 45 Cal.2d at p. 73.)

There is case authority in California that, after the rights of a subsequent lienholder have attached, a debtor cannot by his own acts (either by a waiver

---

[3]That section reads in pertinent part: "No waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the waiver is in writing and signed by the person obligated. No waiver executed prior to the expiration of the time limited for the commencement of the action by this title shall be effective for a period exceeding four years from the date of expiration of the time limited for commencement of the action by this title and no waiver executed after the expiration of such time shall be effective for a period exceeding four years from the date thereof, but any such waiver may be renewed for a further period of not exceeding four years from the expiration of the immediately preceding waiver. Such waivers may be made successively." (Code Civ. Proc., § 360.5.)

of the statute of limitations or absence from the state) affect the subsequent lienor's right to rely on the statute of limitations regarding prior encumbrances. (*Ekmann* v. *Plumas County Bank* (1932) 215 Cal. 671 [12 P.2d 433]; *Watt* v. *Wright* (1884) 66 Cal. 202 [5 P. 91]; *Lord* v. *Morris, supra,* 18 Cal. 482.) At first glance, this authority appears to support Kaichen's' position. Kaichen's obtained its judgment lien in December 1991 *before* Ferro and Rohr's April 1992 extension agreement. Close analysis, however, reveals these cases are distinguishable. All involved agreements to extend the statute of limitations or to create a new obligation between the debtor and the first creditor *after* the limitations period had expired on the old debt. The aforementioned rule has no application here.

■ The junior lienholder is in the same position as the debtor, and its rights regarding any available defense are the same. (*Mitchell* v. *Auto. etc. Underwriters, supra,* 19 Cal.2d at p. 6; *Lord* v. *Morris, supra,* 18 Cal. at p. 491.) Thus, where the debtor loses his or her right to raise the defense of the statute of limitations, it is not available to the junior creditor. ■ Here, Ferro gave up its right to utilize the defense by waiving it before the limitations period had run on its debt to Rohr. This waiver was legitimate, despite its occurrence after the creation of Kaichen's' judgment lien.

Kaichen's claims it is against public policy for a senior creditor to shield a debtor in perpetuity from claims of junior creditors, suggesting "collusion" here between Rohr and Ferro.

First, there is authority that a perpetual waiver of the statute of limitations, and hence a perpetual continuing lien, may be valid. (*Dexter* v. *Pierson* (1931) 214 Cal. 247, 248-249 [4 P.2d 932].) *Dexter* involved an express promise by the mortgagor, inserted into the mortgage, that the statute of limitations was perpetually waived. The court found this provision was valid since it was of record, and the purchaser took with notice of it. (*Ibid.*) Here, although no such promise exists between Ferro and Rohr, Kaichen's acquired its lien with full notice of Rohr's superior lien, and thereby with implied knowledge of all Rohr's rights as a senior creditor, including its limited right to extend Ferro's debt. (*Eilke* v. *Rice, supra,* 45 Cal.2d 66.) We hold this was sufficient notice allowing continuation of the subject debt.

Second, there is no evidence of conspiracy in Rohr's efforts to recover the value of its loan. Nothing inherently offensive occurred here. Rohr simply was exercising the rights accorded it under the law as a senior creditor. It did not "sleep on its rights" as Kaichen's asserts, but timely acted to protect its security interest.

In so doing, Rohr actually indirectly protected Kaichen's' rights as a creditor. As Rohr states, had it decided to foreclose on its security interest in 1992, the secured property would be gone and Kaichen's would be in no better position than it is in today. At least, Kaichen's has open to it the possibility that it may collect its debt from Ferro sometime in the future.

Rohr's extension of debt agreement with Ferro not only promoted the rights of Ferro's creditors, it assisted Ferro by allowing it to stay in business. In light of these advantageous results, public policy should protect, not condemn, the agreement made here. Providers of capital, seed money and financing for business should be encouraged, not hindered.

Kaichen's' final contention, raised for the first time in its reply brief, that the trial court abused its discretion by refusing to consider the merits of Kaichen's' request for judicial notice, is waived. ■ Points raised in a reply brief for the first time generally will not be considered. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484.) There is no reason to depart from this rule here.

The trial court's order, denying Kaichen's' motion to invalidate Rohr's lien against Ferro, is affirmed.

Costs on appeal are awarded to respondents.

Gilbert, J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 25, 1995.